## Flanagan, Appellant, *v.* Flanagan.

*Divorce—Desertion—Date of desertion—Evidence.*

A libel in divorce on the ground of, desertion is properly dismissed, where the date of desertion mentioned in the libel is not in accordance with the evidence, and there is no amendment to make the pleadings conform with the facts.

Argued December 2, 1924. Appeal, No. 125, Oct. T., 1924, by libellant, from decree of C. P. Schuylkill Co., Sept. T., 1923, No. 1, dismissing libel in divorce in the case of Elizabeth Flanagan v. Edward Flanagan. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Libel in divorce. Before BERGER, J.

The facts are stated in the opinion of the Superior Court.

The case was referred to J. F. Mahoney, Esq., as master, who recommended that a divorce be granted. Subsequently, on exceptions to the master's report, the court sustained the exceptions and dismissed the libel. Libellant appealed.

*Error assigned* was the decree of the court.

*J. O. Ulrich,* for appellant.

No appearance and no printed brief for appellee.

OPINION BY TREXLER, J., February 27, 1925:

The libel of divorce filed in this case alleges desertion. The date of the wilful and malicious desertion was fixed as of the 30th day of January, 1907, persisted in for the space of two years thereafter and continuously since. The substance of libellant's narrative is as follows: a few days after their marriage the parties went to Kem-

bal, West Virginia, and lived there for two months until January, 1907, when libellant returned to Cumbola, Pa., to attend a funeral. About a month after this the respondent, the husband, came to New Philadelphia to attend his father's funeral. Upon that visit she talked to him about establishing a new home. She asked him to come to Cumbola to take charge of the store business for her mother, but he refused and returned to Kembal, West Virginia. At Kembal, West Virginia, she was obliged to live in a house alone every night as her husband left at 5 o'clock in the evening and did not return until 7 o'clock in the morning; that few white people lived in that locality, except the manager of the store. Negroes were about all the time and it was dangerous to her life and injurious to her health to be alone at night; that she talked to her husband "to get work by day and get a house in a different locality, both of which he refused to do." She said her husband told her one night that the negroes would "think nothing of throwing a rock through the window or killing her for $10 and that he himself was afraid." The manager of the store told her that if the negroes knew she was alone they might burn down the house and murder her. About eight years afterward she went to Kembal, West Virginia, and through some friends, among them a priest, she met her husband, shook hands with him and kissed him. He asked what brought her down. She told him she came down to see him and make up. "He stepped back and said, you go home." She told him about the lonesome place she was compelled to live in and he said he had to live in just as lonesome a place. He made no offer to provide a place for her at this meeting. He did not provide a place for her to stay that night. He shook hands with her and said good bye. She has not seen her husband since. Her brother testified that a few times in 1918 he wrote to respondent trying to effect a reconciliation but that he received no reply.

There is no evidence that the desertion occurred at the date fixed in the libel. Neither has there been any attempt made to amend the libel so as to conform to the date where the visit to West Virginia and the attempt for reconciliation was made. When the wife left the husband in January, 1907, it was to attend a funeral. She does not state that she left the common habitation on account of danger to her life by reason of her being alone in the house every night. The conversation that she had with her husband at the time he came to New Philadelphia to attend his father's funeral did not contain an offer on her part to return to their common habitation, but that he should come to Cumbola and take charge of the store business of her mother. He evidently did not care to do this and he had a right to decline. The fact that her brother wrote several times to respondent trying to effect a reconciliation does not change the situation, for we are not informed as to what the basis of the offer was. Probably it was the same as the wife's that he should come and take charge of the store business of her mother. Certainly there was no desertion on the part of the husband beginning January 30, 1907. When she alleges that she left their common home to attend a funeral we must take her at her word. Her condition was not so intolerable that it caused her to leave. It was her desire to attend the funeral which took her away. There is no evidence that when she left her husband she made known to him her intention not to return unless he secured employment by the day and another house in which to live. There was no proof of any course of treatment which would justify her in leaving him, and if there was, she should have so informed him when she left. After the two years expired under the conditions presented here he would have been entitled to a divorce from her. We are not prepared to say that her offer to make up with him eight years ago and his refusal was a constructive desertion. Moreover as we pointed out

before, it is not the basis of the libel.   We think the
court was right in refusing the divorce.

The order of the lower court dismissing the libel is
affirmed, libellant is directed to pay the costs.