Gilbert *v.* Gilbert, Appellant.

Argued November 1, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunning-
ham, Baldrige, Stadtfeld and Parker, JJ.

*Otto Kraus, Jr.,* for appellant.

*G. Harry Ditter,* for appellee.

Opinion by Cunningham, J., January 25, 1933:

On January 8, 1930, John Ralph Gilbert filed his
libel for an absolute divorce from Hilda Gilbert upon
the ground that on January 10, 1928, she deserted him,
within the meaning of clause (d) of § 10 of "The Di-
vorce Law" of May 2, 1929, P. L. 1237; the report of
the master recommended a decree and the court below
dismissed the exceptions thereto; from the final de-
cree, entered December 7, 1931, Hilda Gilbert now
appeals.

The parties were married December 23, 1923, when
each was about twenty-one; during the year following
their marriage they lived with the wife's parents at
No. 5308 North 12th Street, Philadelphia, but in Jan-
uary, 1925, established their own home at No. 5853
Brush Road, where they lived until their separation.
The purchase of the property, conveyed to them by
entireties, was financed by libellant and his parents;
it is mortgaged to an amount approximating its value.

Two daughters were born to them—Janice May on January 5, 1925, and Jaqueline, November 7, 1926.

Libellant's explanation of the causes leading up to, and the circumstances of, their separation was that they had continual arguments, chiefly over alleged interference in their affairs by respondent's mother, and a final and serious quarrel following a New Year's party in 1928. His version was that, after most of the guests had departed, he discovered respondent on a davenport in what he considered a compromising position with one of their acquaintances—a married man. This man's wife was also seated on one end of the davenport and the weight of the evidence relative to this incident supports the statement of respondent that there was no justification for libellant's accusations; the quantity of liquor consumed at the party probably accounts for some unconventional conduct and for the offense taken by libellant.

Shortly after this quarrel, respondent, according to libellant, told him she could not go on living with him any longer, and, although he coaxed her to stay and had their minister (whom neither side called) come in to remonstrate with her against breaking up the home, refused to remain. His story was that on January 9 and 10, 1928, she packed her clothing, and, on the evening of the 10th, went with her father and sister to their home; she and the children have remained there continuously. Libellant stayed at the common home until February 3d, then rented it and went to live with his parents. As the result of proceedings in the municipal court, he was ordered to pay his wife $12 a week toward the support of the children and herself. He was, and still is, employed by a firm, of which his father is a member, receiving wages which have varied from $25 to $60 a week, and at the time of hearing were $40.

In her answer, respondent denied the charge of desertion, and at the hearings contended she left home

with libellant's consent because she had been ill and unable to take care of the house and children. When interrogated with respect to the circumstances of the separation she replied: "I was sick. I had an appendix condition which I had been told that I should undergo an operation. My husband consented that I should go home to my family until I should recuperate from this illness, which I did not. The spring of that year I had to undergo an operation. At that time I went to the Hahnemann Hospital and I was there for two weeks. In that time I never heard or saw anything of my husband." The operation was performed early in March, 1928; libellant said he knew she had chronic appendicitis but asserted he first learned of the operation through his mother's physician, and respondent admitted she did not tell him she was going to the hospital.

Within a month after leaving, respondent consulted counsel and on February 7, 1928, filed a libel in divorce against her husband at No. 240, March Term, 1928, Common Pleas No. 5 of Philadelphia County, upon the ground of indignities to her person. Libellant testified the libel was served on him and his copy was received as an exhibit in this case. In the course of respondent's cross examination before the master, she stated she at no time "thought of staying away"; her attention was then directed to her application for a divorce and to the question, "And you had no intention of coming back, did you?" her only reply was, "I did that spasmodically." To the inquiry why she had sent for her furniture her reply was that she did not take all the furniture belonging to her.

The record contains many pages of conflicting testimony relative to the attitude and conduct of the parties toward each other, but, with the exception of a matter to be referred to later, none of the incidents testified to by either, even if admitted by the other, would have been sufficient ground for divorce, or

would have justified either in withdrawing from the
home. They did not amount to such a course of con-
duct as could properly be described as humiliating, de-
grading, or indicative of that settled hate and es-
trangement which furnishes a legal ground for a de-
cree of divorce: Sharp v. Sharp, 106 Pa. Superior
Ct. 33.

There was also a mass of conflicting evidence upon
the question whether either had, at any time since the
separation, made a bona fide offer looking toward a
reconciliation and the resumption of conjugal rela-
tions, but, in view of the developments at later hear-
ings, we need not attempt to appraise this evidence.

A reading of the entire record leaves the impres-
sion that the rocks upon which this marriage was
wrecked were largely financial; libellant seems to have
expected respondent to run the house on an allowance
of from eight to ten dollars a week and respondent
insisted it could not be done on less than thirty; neith-
er position was reasonable in view of libellant's wages,
which varied from time to time. These parties evi-
dently did not take each other for better or for worse;
it never seems to have occurred to them that their
marriage vows bound them to mutual helpfulness and
loyalty in poverty as well as in wealth and in sickness
as well as in health; the evidence discloses no honest
effort to make the best of the situation, as it existed
from time to time, both for themselves and their chil-
dren. Unfortunately, their young daughters are the
innocent victims of the lack of stability and coopera-
tion on the part of their parents and perhaps are bet-
ter off with their grandparents.

Both were seriously at fault, but the fact remains
that respondent left her home and went, with her chil-
dren and belongings, to that of her parents. She as-
serts she left only temporarily and on account of ill-
ness, that she intended to return, and has always been
willing to go back if libellant would agree to terms she

considers reasonable. But she is confronted with the fact that within a few days after she left her husband she sought a divorce from him and, in so doing, averred she had been obliged to withdraw by reason of indignities offered to her person. Nothing seems to have been done in the matter after service had been obtained, except to secure leave to amend her libel, but it is difficult to reconcile such actions with what she now declares was the reason for her leaving and her intention with regard to returning.

Reference to indignities brings us to the matter above mentioned. Near the termination of the proceedings before the master, respondent, while under cross examination, testified that upon two occasions— the first on December 29, 1923, and the other early in 1924—libellant attempted certain undescribable sexual abnormalities, detailed in her testimony, and added that her demand for a changed attitude upon his part, as one of the conditions upon which she would return, was based, to some extent, on these matters. At the following meeting, libellant positively denied these charges and said he "never heard of anything like that until [he] came into [that] room," When asked by his counsel whether he was "satisfied to go back and live with [respondent]," he replied, "I was at that meeting, but after accusing me of the thing that we just spoke of, I changed my mind absolutely. I don't want to live with her now, no."

Here, then, we have a positive charge and an equally positive denial; obviously, corrobation of either party could not be expected. There is present, however, one significant factor. If respondent is to be believed, these attempts were both made within two months after her marriage and she withheld her accusation until near the end of the proceedings before the master—a period of more than six years. If she had acted promptly, even after the second offense, to obtain a divorce upon the grounds of such gross indig-

nities, her charges would have been entitled to greater weight; that would have been the natural thing for her to do. Under all the circumstances, and particularly in view of the time fixed by respondent, we are not disposed to consider these charges as a legal justification for her withdrawal in 1928. On the other hand, if the charges are false, we cannot say that libellant's refusal, at the final meeting before the master, to resume marital relations is without justification.

It is still an element in the charge of desertion that the "absence from the habitation of the injured and innocent spouse" must be persisted in "without a reasonable cause" for the space of two years. It is earnestly contended by counsel for respondent, under the authority of Zeiler v. Zeiler, 58 Pa. Superior Ct. 220, and Sperling v. Sperling, 82 Pa. Superior Ct. 308, that the period of time covered by the litigation instituted by respondent should not be included in the prescribed period, because its pendency furnished a "reasonable cause" for her absence from the home. It is true that when her libel was filed the indignities which would entitle a wife to a divorce were required to be such as, not only rendered her condition intolerable and life burdensome, but also forced her to withdraw from the home, and her libel contained the averments then required by the statute. But, in our opinion, this case is not ruled by those cited. In each of them, the wife's application for a divorce upon the ground of indignities was made in good faith and litigated to a conclusion; although the wife failed to sustain her charges in each case, the court was fully satisfied they had been made in good faith, and, therefore, held, in subsequent proceedings by the husband upon the ground of desertion, that the time occupied by the litigation instituted by the wife could not be included in the period during which a desertion must be wilfully and maliciously persisted in. Here, re-

spondent's own testimony negatives the contention that her proceeding was instituted and pursued in good faith. Her own characterization is that it was begun "spasmodically." The defense here was not that she left because of indignities which she honestly believed entitled her to a divorce, but that she went away with the consent of her husband and with the intention of returning. Granting that the filing of a libel by her in good faith would tend to negative the existence of that intention to desert which is essential to support a decree against her, it is quite clear there is no room in this case for the application of that principle.

Upon consideration of all the evidence, we deem it sufficient to sustain the decree and accordingly dismiss the assignment of error thereto.

Decree affirmed.