## Detz v. Detz, Appellant.

Argued March 4, 1941.

Before

KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, and HIRT, JJ.

*Charles A. Shea, Jr.,* with him *Neville B. Shea,* for appellant.

*William A. Valentine,* with him *R. A. Livingston,* for appellee.

OPINION BY CUNNINGHAM, J., June 30, 1941:

In this action of divorce a. v. m. the husband, Lawrence Detz, alleges in his libel that his wife, Mary Detz, wilfully and maliciously and without reasonable cause deserted him on or about September 25, 1934, and continued in her desertion "during the term and space of two years and upwards."

The parties were married January 16, 1924, but separated in 1931, and lived thereafter at the homes of their respective parents. The separation being consentable, the case turns on the question whether the husband made a bona fide offer on September 25, 1934, to provide a suitable home and resume marital relations, which the wife refused without cause and persisted in such refusal for the full statutory period of two years: *Weisbrod v. Weisbrod,* 103 Pa. Superior Ct. 267, 156 A. 542.

The present libel was filed January 19, 1938; hearings

were held February 10, and August 1, 1939, before a master, who recommended a decree; exceptions to his report were dismissed and a final decree entered in libellant's favor by the court below; the present appeal is by the respondent from that decree.

Testimony taken in the course of a former unsuccessful action by this libellant, which he instituted in 1935 and in which he charged a desertion, alleged to have occurred in 1930, was offered in evidence as part of the record in the present case.

At the time of the hearing of February 10, 1939, libellant was thirty-nine years of age and his wife thirty-seven. For the first four years of their married life, or until November of 1927, the parties lived together in a home at No. 30 Charles Street, Newport Township, Luzerne County, across the lot from the home of libellant's mother. About that time respondent underwent an operation for goitre at a hospital where she remained two weeks. After her return she lived with her mother, at 77 Newport Street, until February 28, 1928, when she was sent to Retreat Mental Hospital, suffering from a depressed mental condition. She remained at the Retreat Mental Hospital sixty-four weeks, or until May 14, 1929. Upon her discharge from the institution she returned to her mother's home where she has lived ever since. Two children were born of the marriage, a girl who died in February of 1930, and a boy, born February 2, 1927, who lives with his mother at her parents' home.

Libellant bought a lot in 1931, just across the street from his mother's home, for which he paid $1500. He had an architect prepare plans and specifications for a house to cost $6500. Although he showed these plans to respondent and, by promising her a separate home, induced her to have intercourse with him at her mother's home during a period of about six months in 1931, no steps were taken toward the actual erection of a home. Respondent testified libellant gave many excuses for not

building, including difficulties about the sewer, trouble with the contractors and the expense of sending his brother to school.

The last time the parties had marital relations was in 1931. In 1930 respondent had obtained an order for support of fifty dollars per month which libellant has paid ever since. For a number of years after their marriage libellant was employed in a cigar factory and also as a part time fire truck driver, earning from two hundred and fifty to three hundred dollars per month. By 1939 he had only the job at the cigar factory which paid about one hundred and fifty dollars per month.

Libellant bases his present action on an oral request to respondent to return and live with him in a home of their own, conveyed to her through a social worker, Miss Carmedy, about September 25, 1934. He testified he asked Miss Carmedy to contact his wife, talk to her, and see if she would return to him; Miss Carmedy had known the parties since 1930. Her testimony regarding libellant's offer, made through her, is as follows: "He came to us and asked us to have some one approach her about coming back to live with him. He came in September, 1934 and I made the call two days later. I talked to her about it and she wouldn't make any definite answer then, but said she would think about it seriously and let me know. ...... I just approached the woman and asked her to go back to her husband, that he had made a request to that effect and that I had come for that reason and that she was to see, and she would think about it and let us know. That is merely all that transpired. I asked her would she let us know what she would do about it. She of course didn't let us know." Miss Carmedy met respondent on the street later, and asked her if she had "thought anything further about the request that had been made and she said no, she hadn't."

Respondent admitted Miss Carmedy spoke to her about living with libellant; she denied ever refusing to

live with him and stated she was always willing to do so if he would provide a home away from his mother.

Where, as here, the separation has been consentable, a husband, before his wife's absence from him can become a desertion, must, in good faith, take some unequivocal step looking to a resumption of the family relation in a home such as his circumstances will permit him to provide. An offer of reconciliation must be made in sincerity, and with the intention that it be accepted; it must not be colorable or made for the purpose of escaping marital obligations or laying a foundation for an action: *Weisbrod v. Weisbrod,* supra; *Walsh v. Walsh,* 117 Pa. Superior Ct. 579, 178 A. 399; *Jones v. Jones,* 144 Pa. Superior Ct. 372, 19 A. 2d 480; *Michell v. Michell,* 134 Pa. Superior Ct. 230, 238, 3 A. 2d 955. The burden is upon libellant to establish the good faith of his offer: *Walsh v. Walsh,* supra, *Jones v. Jones,* supra.

"It is, of course, the duty of a wife to live with her husband at such reasonable place which he can, according to his means, provide as a home. Since it is the obligation of the husband to provide a home, his choice in the matter is controlling provided it is exercised in good faith": *MacDonald v. MacDonald,* 108 Pa. Superior Ct. 80, 83, 164 A. 830.

We are not convinced of the good faith of libellant's offer in the present case. The parties lived in close proximity; under such circumstances a direct personal offer would, at least, have seemed more genuine than one made formally through an intermediary. Even as made, the offer was vague and indefinite. Libellant did not own a home, nor had he taken any definite steps toward securing a suitable, separate home at the time he alleges the constructive desertion began. Mere ownership of a vacant lot with nothing more than plans for the erection at some indefinite future time of a dwelling did not impose upon respondent any duty to accept his formal offer. Nor was any action taken

toward renting a house or otherwise providing a suitable domicile pending the erection of the dwelling he says he intended to construct.

Libellant's own testimony is conflicting, to say the least, with regard to whether he ever spoke to his wife after 1934 or 1935 and asked her to come back. At the hearing of August 1, 1939, he stated he had asked respondent if she was ready to live with him every time she requested her support check, covering a period of three years after September, 1934. When respondent's counsel called libellant's attention to his testimony of February 10, 1939, wherein he had stated, on cross-examination, that he had never talked to his wife subsequent to 1934 or 1935, libellant attempted to explain the discrepancy by saying he lied in his previous testimony. Such an admission, although libellant later attempted to explain it away, is not helpful to his case.

Furthermore, even if we should assume that libellant's offer in September, 1934, was bona fide, and unjustifiably refused by respondent, his own testimony, on cross-examination, indicates he withdrew his offer before the expiration of two years. It was shown that libellant, testifying at a hearing held in September 1935, during his prior divorce action, had stated he was unwilling at that time to take her back and provide a home for her. Libellant's admission he had so testified follows: "Q. You did testify that you would not provide a home for your wife, didn't you? A. That's right. Q. So that eleven months after the time that you said your wife deserted you, namely, September 25, 1934, eleven months after that date you absolutely refused to make and provide a home for your wife? A. That's right."

The libellant, in every divorce action, has the burden of establishing a cause of action by clear and satisfactory proofs upon which the decision of the court may be confidently rested: *Hess v. Hess*, 105 Pa. Superior Ct. 596, 597, 161 A. 743; *Good v. Good*, 113 Pa. Superior

142

Ct. 592, 594, 173 A. 430; *Walsh v. Walsh,* supra. In this case the evidence relied upon by libellant falls far short of the required standard and entirely fails to establish the desertion charged in the libel. The assignments of error are sustained.

Decree reversed and libel dismissed.