## Davis, Appellant, *v.* Davis.

Submitted October 25, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Samuel H. Jubelirer* and *Jubelirer, Jubelirer, & Smith,* for appellant.

*Chester B. Wray,* for appellee.

OPINION BY JAMES, J., December 15, 1944:

This libel, charging the wife with wilful and malicious desertion since March 10, 1938, was filed by the husband on August 21, 1942. The record largely consists of the testimony of libellant and respondent, the only other testimony being the testimony of libellant's father in relation to non-support proceedings which had been instituted against him, and also reports of the Adult and Parole Probation Offices of Blair County,

which were introduced in evidence. The master recommended the divorce, but the court reversed and sustained the respondent's exception. Upon reading the record carefully, we, too, believe that the libellant failed to meet the burden of proof by clear and satisfactory evidence.

The Divorce Law speaks of a " 'wilful and malicious desertion,' and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years." Act of May 2, 1929, P. L. 1237 §10, par. 1(d), 23 PS §10. There must be a "wilful and malicious desertion", and afterwards an absence for a space of two years. Of course, actual malice need not be proven. "If the desertion is intentional, it is wilful; if wilful, malicious." *Hedderson v. Hedderson,* 35 Pa. Superior Ct. 629, 631, *Ingersoll v. Ingersoll,* 49 Pa. 249, 251; *Wagner v. Wagner,* 121 Pa. Superior Ct. 413, 415, 183 A. 369. However, since "The applicant for a divorce . . . . . . must establish with sufficient certainty, each and every of these ingredients, as elements necessary to constitute desertion within the meaning of the act", *Smith v. Smith,* 15 Pa. Superior Ct. 366, 370, he must convince the court, by clear and sufficient evidence, that the respondent was acting intentionally and wilfully to commit desertion. However, as long as the respondent did not intend to terminate matrimonial cohabitation, and the absence from their home was intended to be but temporary, arising from circumstances which though less than legal justification for leaving, if the withdrawing spouse offers immediately afterwards to return to the common home, the implication is irresistible that a wilful and malicious desertion never had existed, that, at worst, a temporary separation had occurred.

The evidence in this record fails to reveal the slightest trace of a wilful and malicious desertion on the date alleged in the libel, March 10, 1938. Apparently

respondent's testimony is substantially correct. When the parties were married on October 26, 1936, libellant was working for his father in return for a weekly cash payment of $15 and the free use of a four room apartment, with a separate entrance, on the second floor of the family house. At the urging of his wife, libellant had made some ineffectual attempts to rent a suitable separate home. On March 10, 1938, the date of the alleged initial act of desertion, while the libellant was away working, a heated controversy between the respondent and her sister, on the one hand, and the parents and the sister of libellant, on the other side, concerning the respondent's use of the telephone, ended in libellant's father telling respondent "to get the hell out and stay out and take the baby". Previously, libellant's mother tried to beat respondent and threatened to send for the police. Consequently, respondent, who was then pregnant, left for her mother's home together with the seven months old child. This is the version given by the wife and the only testimony in the record as to what happened on March 10, 1938. When the libellant returned a few hours later, he learned of the quarrel, but despite the delicate condition of his wife, he made no effort to see her or his child of seven months. On the other hand, she telephoned his home that same afternoon and evening and the next morning, only to be told that he was away. She decided to visit his apartment. Libellant was in the bedroom, fully clothed, and as respondent started to put her arms around his neck, he threw them down, saying "Mother comes first." Then his father rushed in with the words "you get the hell out of here and stay out." To this, respondent said nothing. Being upbraided for leaving, she offered to remain with him until they could move to another place. Again the father ordered her out in the same manner, and again the husband kept quiet, whereupon she left with what few clothes she needed immediately for herself

and the baby, without any objection from the libellant. During the next few weeks she visited twice the gasoline station where libellant was working in order to effect a reconciliation, but he refused to commit himself in any way. She even suggested—vainly—to return as a housekeeper, without the obligation of sexual cohabitation. Some six weeks later, during a hearing on a support order sought by respondent, the judge asked the two to start living together; she agreed, while libellant answered, "I can't say."

In his testimony, libellant gave a version differing in many details. However, while his statements remain uncorroborated, her story is supported by the account given by the parties to the Adult Parole officer in April, 1938, within five weeks of these events. Libellant's statement then was. "Her sister slapped his mother's face, he admits his father ordered them both out. He does not want to live with her, he is afraid there will be trouble all over again." As for her story, "She wants to live with him, she can't get along with his people. She still cares for him. His father ordered them both out." It is further verified by a letter from the libellant to the Parole Officer, dated October 4, 1938. "If you recall I told the Court that I would not live with her in Altoona ...... I believe we can get along alright if we don't live close to my people and her's." "A decree may be supported by the testimony of the complainant alone, but if this testimony be contradicted and shaken by the respondent and there be no convincing circumstances warranting a disregard of the contradictory evidence, a case has not been made out." *Rommel v. Rommel,* 87 Pa. Superior Ct. 511, 513; *Twaddell v. Twaddell,* 95 Pa. Superior Ct. 429, 432; *Wagner v. Wagner,* 112 Pa. Superior Ct. 485, 499, 171 A. 419.

When a man enters into the marriage relationship he undertakes to safeguard the happiness and health of his wife, even at the cost of severing the bonds which

tied him to father and mother. If libellant preferred parents to wife, he cannot therefore consider himself an injured and innocent spouse; if anyone may complain, it is the respondent. The record fails to reveal by a preponderance of evidence that at the moment of leaving the home and the weeks immediately afterwards, respondent anticipated the end of cohabitation and cessation of living as man and wife. The departure was with libellant's consent, and it cannot constitute desertion. *Hill v. Hill,* 96 Pa. Superior Ct. 410; *Walsh v. Walsh,* 117 Pa. Superior Ct. 579, 178 A. 399.

Perhaps there is no need to consider the evidence further, as the beginning of the desertion period, March 10, 1938, is obviously incorrect. When an ascertained date has been fixed as the time of desertion, libellant cannot hinge his case on an act of desertion committed subsequently. See *Realf v. Realf,* 77 Pa. 31; *Wagner v. Wagner,* supra. No amendment to the libel was ever filed, and the variance between the allegata and the probata would ordinarily be fatal. See *Goldsmith v. Goldsmith,* 84 Pa. Superior Ct. 430, 433; *Flanagan v. Flanagan,* 84 Pa. Superior Ct. 448, 450. Nevertheless, overlooking any technicality, we have examined the entire testimony and still remain unconvinced that the libel should be granted.

"Where, ......, the separation has been consentable, a husband, before his wife's absence from him can become a desertion, must, in good faith, take some unequivocal step looking to a resumption of the family relation in a home such as his circumstances will permit him to provide." *Detz v. Detz,* 145 Pa. Superior Ct. 136, 140, 21 A. (2d) 424; *Jones v. Jones,* 144 Pa. Superior Ct. 372, 19 A. (2d) 480. The libellant must establish the good faith of the offer, *Walsh v. Walsh,* supra; *Detz v. Detz,* supra, not only that it was made in all sincerity, but under circumstances which should have convinced respondent of the genuineness of his

proposal. Without undertaking to judge the honesty of four letters which libellant wrote from North Carolina, urging respondent to join him, she had ample room for the suspicion which led her to refuse to move. In his first letter, dated October 4, 1938, he stated he had a job paying $13 per week, even less than he received in Altoona, where he had free rental. His past conduct was not reassuring, he made no effort to see his wife or baby before leaving town, or to support her during the period of pregnancy. One of the letters contained intimation of sexual misbehaviour while away. The offers were vague and uncertain, especially when addressed to a financially embarrassed spouse some hundreds of miles away. They spoke of two rented rooms and of nothing else. A husband who permits his wife to be driven from their home without protesting, must do more than write a few letters from a distance proclaiming his love and offering two rooms for a family of four. At the least he should give some information about his earnings and capacity to maintain his family in order to give her an opportunity to determine the genuineness of his affection.

Libellant failed to meet the burden of proving a bona fide offer to terminate the consentable separation. A serious desire to resume marital relations would have shown more effort on his part. "Never ought divorces to be easily obtained, for marriage is the most sacred of human relations, and should never to be dissolved without clear proof of imperious reasons. We may do wrong to the parties and their children, and to the public, when we aid one party in severing the relation without a clear necessity . . . . . ." *Richards v. Richards,* 37 Pa. 225, 228; *Welsh v. Welsh,* 142 Pa. Superior Ct. 421, 422, 16 A. (2d) 672; *Hepworth v. Hepworth,* 129 Pa. Superior Ct. 360, 362, 195 A. 924.

Decree affirmed.