## Tatem *v.* Tatem, Appellant.

Argued October 7, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Melvin Alan Bank*, with him *John Pemberton Jordan*, for appellant.

*Stuart L. Kirk*, with him *Henry A. Craig*, for appellee.

OPINION BY FINE, J., March 15, 1949:

William B. Tatem instituted this action in divorce against his wife, Blanche E. Hughes Tatem, upon the ground of desertion. The respondent filed her answer to the libel, denying the charge. The case was heard by a master, who held twenty-two hearings, and who filed a detailed and exhaustive report, covering sixty-two printed pages of the record, in the course of which he found for reasons therein assigned that testimony of the respondent and her witnesses was untrustworthy and the evidence of the libellant credible; and concluded with a recommendation that a divorce be granted libellant. Exceptions filed by respondent to the master's report were dismissed by the court below and a final decree was entered. Respondent appealed.

The record in this case consists of approximately 1300 pages and is unreasonably voluminous. "Considering that Carlyle's History of the French Revolution is less bulky, one would think that the matrimonial troubles of the [Tatems] could have been told in more condensed language, and that the delinquencies even of a Messalina or a Lucretia Borgia could be depicted in less volume than counsel have seen fit to employ in the present case": *Gabriel v. Gabriel*, 3 Pa. D. & C. 607 (by STERN, J., now Justice STERN). The testimony was unusually extended and repetitious, the master's report was quite lengthy, detailed and helpful and in marked contrast the opinion of the lower court was brief, covering one-half printed page. After observing in the opinion that the master was in better position than the court to judge the credibility of evidence, the court succinctly stated: "We have very carefully reviewed the testimony and our impression from the testimony is the same as the Master's." We do not have any salutary expression of the lower court's independent judgment; nor are we aided by any discussion of the evidence, of the conclusions of facts and of the law

applicable to the facts as found. What was said in *Giles v. Giles*, 80 Pa. Superior Ct. 469, 470, is apt here: "Of whatever drudgery the court below may relieve itself in a suit for divorce by appointing an examiner [master], neither it nor we can escape the burden of a careful consideration of the evidence in order to ascertain whether in truth it does establish the statutory grounds for a divorce." As we are required to do, in the absence of a jury trial (*Sloan v. Sloan*, 122 Pa. Superior Ct. 238, 186 A. 219), we have carefully read the entire record and, giving the fullest consideration to the master's findings on the credibility of the parties and their witnesses, we have reached the independent conclusion that the libellant encouraged and consented to the separation which occurred between him and the respondent.

The libel was filed on October 31, 1940, fixing the date of desertion as February 15, 1933. During the twentieth hearing on October 15, 1941, the master stated (page 1259 of the record) : ". . . I will suggest, Mr. George, that you amend your libel to fix a later time for the separation . . . for the desertion . . . because on the evidence, I cannot recommend a divorce be granted on the grounds of the separation of February 15." The libellant, apparently appreciative of the master's observation, adopted his suggestion and on November 24, 1941, amended the libel fixing September 4, 1933, as the date of desertion. Two hearings followed, concluding on December 18, 1941, almost a full year after the initial hearing. The master filed his report on December 15, 1942, and after divers proceedings in the lower court, decree was finally entered on November 22, 1943, from which was entered an appeal on December 9th, following.

The parties were married on July 26, 1917, and lived together in Philadelphia until May, 1928, when the libellant moved to Wilkes-Barre where he was joined during

varying intervals by his wife. In 1932 he removed from Wilkes-Barre to Harrisburg where the respondent lived with him periodically until their separation in August or September, 1933. During the eleven years the parties lived in Philadelphia there were no troubles of moment to disturb their marital life. With the libellant's assignment to Wilkes-Barre territory by his employer there came serious and almost continuous accusations and quarrels between them. He rooted her suspicions of infidelity and quarrelsome disposition in her wish to be with her mother in Philadelphia; she seated the troubles in his infidelity, in his frequent insobriety resulting from entertainment of customers and in ignorance of marital courtesies. He claimed she refused to have sexual relations after 1929; to which she replied that they had normal and abnormal relations (the latter beginning in 1929) until August, 1935, and abnormal relations solely until 1937. Both parties asserted they desired children and each denied the other possessed that unsatisfied yearning. It would unduly extend the opinion to state in detail contradictory testimony which was produced by the respective parties and which cannot be harmonized as to many essential and important items.

The only question raised on this appeal is whether the evidence is sufficient to support the decree. The respondent stoutly denies the separation was wilful and malicious and asserts the separation was consented to and encouraged by the libellant. "Desertion is an actual abandonment of matrimonial cohabitation, with an intent to desert, wilfully and maliciously persisted in, without cause, for two years. The guilty intent is manifested when, without cause or consent, either party withdraws from the residence of the other": *Ingersoll v. Ingersoll*, 49 Pa. 249, 251. The libellant has the burden to establish every essential fact by clear and satisfactory proofs which it is our duty to scrutinize with

proper care.: *Picciano v. Picciano*, 110 Pa. Superior Ct. 189, 168 A. 488. But, where separation has been established by evidence the burden shifts to the other party to prove consent or reasonable cause: *Irwin v. Irwin*, 131 Pa. Superior Ct. 321, 200 A. 220. "An apparently wilful and malicious intent to desert may be rebutted by evidence that the separation was encouraged by the other party or was by mutual consent. . . . Mere silent acquiescence, however, is not sufficient to establish consent; there must be shown some affirmative conduct amounting to participation, some evidence of a present mutual intention of the parties to separate and live apart": *Mertz v. Mertz*, 119 Pa. Superior Ct. 538, 540, 180 A. 708. The consent that will prevent a divorce on the ground of desertion may be inferred from the conduct of the parties and need not be evinced by an agreement: *Olson v. Olson*, 27 Pa. Superior Ct. 128; *King v. King*, 36 Pa. Superior Ct. 33; *Smith v. Smith*, 85 Pa. Superior Ct. 74.

Although considerable testimony was adduced to show (1) libellant's familiarity and improper conduct with women, known and unknown, while he lived in Wilkes-Barre, (2) libellant's affliction with a social or venereal disease, (3) his consort with an unidentified woman in his apartment at Upsal Gardens during 1939, (4) improper conduct with a Miss Yunger in latter's apartment during 1940-1941, and (5) libellant's sexual perversion, the respondent did not offer such evidence to support cause or justification for the desertion. Much of it, particularly the alleged acts of adultery occurring after the expiration of the two-year period, could not be offered as a defense to the action. *Commonwealth ex rel. Cartmell v. Cartmell*, 164 Pa. Superior Ct. 108, 63 A. 2d 691. It was admitted either to impeach the credibility of the libellant or to show his real motive for seeking a divorce. *Gabriel v. Gabriel*, 3 Pa. D. & C. 607, 613. The evidence of the libellant and respondent on

the pivotal question whether the separation was consented to or encouraged by the libellant is so conflicting that the question really resolves itself into one of credibility.

Contrary to the opinion of the master, we think the testimony of the wife should in the main be accepted and that the testimony of the libellant should be rejected. The soundness of this conclusion will become apparent as we proceed with an analysis of the master's report and an appraisal of some germane evidence.

We are mindful, as heretofore stated, that the master, who has observed the appearance and demeanor of witnesses, is in better position to determine their credibility than is one confined to the cold printed record. "Of course, even to the printed record we may and do apply the other standard tests of veracity. We sedulously examine and weigh the record to discover inherent improbabilities in the stories of the witnesses, inconsistencies and contradictions, bias and interest, opposition to incontrovertible physical facts, patent falsehood and the other factors by which credibility may be ascertained": *Smith v. Smith*, 157 Pa. Superior Ct. 582, 585, 43 A. 2d 371. Guided by these and other standards we are of the firm opinion the master's conclusions founded upon his observations of demeanor and appearance should be rejected.

The master encountered serious difficulty stamping any of the testimony with incredibility and untrustworthiness. In his report he stated: "Your Master has found it exceedingly difficult to decide to his own satisfaction what credence is to be given to the parties and their witnesses. . . . This high credibility of the parties and their witnesses has made your Master's job very difficult. Their versions of the marriage were diametrically opposite and both versions were fully detailed. Your Master permitted the hearings to run to the great length that they attained in the hope that there might

be some break in the case which would show where the truth lay. Notwithstanding the great number of hearings, your Master was disappointed in his hope that evidence would be produced which could be believed beyond question and which would furnish a key to the whole case. However, upon close study of the whole record, your Master has concluded that there is a sound foundation for believing libellant's version of the marriage in its main outline."

However, the master did find "Libellant was not entirely reliable in his testimony, particularly during the earlier hearings . . . [and] his testimony . . . contained many errors . . .[but] when his recollection was stimulated by the testimony of respondent and the letters which she offered in evidence, he was obliged to contradict some of the earlier statements and, indeed, even to amend his averment as to the date of the desertion." An admitted falsehood in evidence given earlier in the same case manifestly bears heavily on the credibility of the witness: *Detz v. Detz,* 145 Pa. Superior Ct. 136, 21 A. 2d 424. Despite this impeachment of libellant's testimony and the impregnation of respondent's evidence with integrity, the master "feels that libellant's testimony as to the main facts, [omitting as we must the pivotal fact, i. e. date of desertion] should be believed . . . [and although] respondent is an unusually truthful woman . . . she is obsessed by her desire to prevent libellant from obtaining a divorce, and that she was willing to go to great lengths to accomplish this purpose . . . [as] demonstrated in . . . detailed testimony concerning the alleged acts of sexual perversion practiced by the parties, . . . [which testimony] would alone discredit her as a witness." It is rather anomalous to reject the detailed testimony of "an unusually truthful" witness and to accept in its stead the "hazy" testimony of a witness who was not entirely reliable in the earlier stages of these proceedings. If, as the master states, the respond-

ent's testimony concerning perversion should alone discredit her as a witness, it should have been unnecessary for him to go beyond the fifth hearing, May 12, 1941, and three hundred pages of testimony to find "where the truth lay," for it was at that hearing she testified to the sexual perversion. That he could not have so concluded is buttressed by his observation that "notwithstanding the great number of hearings, [he] was disappointed in his hope that evidence would be produced . . . which would furnish a key to the whole case." Uncertainties about respondent's testimony of her earnings impeached it as improbable; uncertainties in testimony of libellant's witnesses "enhanced rather than lessened" the credibility. That she is to be condemned and discredited for evincing "a fixed expression of hatred" toward Miss Yunger, libellant's paramour, would do violence to natural and normal reactions. The master criticized the respondent's efforts to prevent a divorce adversely to her yet the libellant who was motivated by the opposite and equally strong desire was not discredited. As a matter of fact both parties were very interested in the outcome of the action which interest must of course be considered in the search for the truth. Here, the libellant's interest when appraised with other factors seemed to be the more persuasive of bias.

That the parties to this action lived with the respondent's parents during the first eleven years of their married life has no probative value and is meaningless. Their residence was established by mutual understanding and happily continued until the libellant was assigned to the Wilkes-Barre territory by his employer. Nor, do we agree with the master that inferences of a strong willed woman "who made most of the decisions . . . in the marital relationship" must be drawn from the testimony to the effect that she went against his will to Harrisburg in August, 1933, to take care of him when he was ill.

We deem it unnecessary to cite other instances where the standards used to determine credibility were not applied with equal strictness to the evidence of both parties. It may be the master was led astray on some details in his keen desire to thoroughly and intelligently perform the duties of his office. It is impossible, however, for us to find in libellant's favor, confronted as we are with the unavoidable conclusions that his testimony is not in the main credible, that in its important phases it is without corroboration, and that it is contradicted not only by the respondent, but by such other persons as were in close relationship with the parties. A very good reason for believing the testimony of the respondent rather than the testimony of the libellant, where they are essentially different, is that in every instance, where there was a way to check the truth or falsity of the respective stories, his story was found to be false: *Ward v. Ward*, 117 Pa. Superior Ct. 125, 131, 177 A. 515.

Having concluded the respondent's evidence is wholly credible, we find that when the parties separated it was by mutual consent, and there was no bona fide attempt by the libellant to effect a reconciliation. Cf. *Franks v. Franks*, 129 Pa. Superior Ct. 487, 492, 196 A. 578. The libellant testified as follows: "Q. What were your relations when you saw her on these occasions [during 1935-1936]? A. Well, I wouldn't say they were unfriendly. We sort of had a mutual understanding she wouldn't come back with me and we never argued much about it." A careful perusal of the record convinces us the libellant considered his marriage a convenience rather than a solemn responsibility. He went and came as it pleased him caring little for the bruised feelings of his wife. His efforts to now discard her are not supported by such evidence as is required to consummate the purpose.

A careful consideration of the evidence convinces us that the separation at its inception and thereafter did not amount to a wilful and malicious desertion on the part of the respondent. His conduct clearly indicated that he was perfectly willing to live separate and apart from his wife and was entirely consistent with the conclusion that it was not against his will. *Pearce v. Pearce*, 53 Pa. Superior Ct. 129. General statements, viz. that he tried to get his wife to live with him, are of little evidential value and are not persuasive: *Good v. Good*, 113 Pa. Superior Ct. 592, 594, 173 A. 430. Libellant's consent was not to a mere temporary separation; it was one of a series of consentable separations,—a part of the marital pattern,—not only acquiesced in but promoted by the libellant. Undoubtedly the separation in August or September, 1933, was by mutual consent and that thereafter he not only acquiesced in the separation but actually provoked its continuance. The conduct of the libellant shows clearly that continued separation was what he desired and was endeavoring to bring about. The evidence is insufficient to establish a wilful and malicious desertion and in such circumstances the libellant is not an innocent and injured spouse.

Decree reversed and libel dismissed.