## Ross v. Ross

628

*George L. Reade*, for libellant.

GRIFFITH, J., December 23, 1946.—In his libel, libellant charged respondent with having offered indignities to his person and with wilful and malicious desertion, beginning on December 11, 1941.

The master's report was originally filed on December 10, 1945, and in that report the master recommended that the libel be dismissed. The case was referred to the master for taking further testimony March 25, 1946.

After the master sent out his notices fixing the date for the second hearing, respondent, who had neither entered an appearance, nor appeared in person, nor filed an answer, came into the master's office and discussed the situation with the master. She did not appear at the second hearing, but apparently, from the action of the master at the second hearing, she had related to him privately her side of the story. For example, on page 5 of the testimony of the second hearing, after counsel for libellant objected to the cross-examination of libellant by the master in regard to matters which were not on record, the master said:

"The master in this case has been informed by this man's wife that she is afraid of him and that the questions which I have asked indicate what occurred that night. . . ."

There can be no doubt about the impropriety of the master hearing one of the parties to a divorce proceeding privately, and then attempting to get on the record the story told him by this party by means of his cross-examination of libellant.

In fulfilling the functions of the office of master in divorce, a member of the bar so appointed is pro tempore an agent of the court and should observe the same rules of propriety in regard to discussing a case to be tried before him as should be observed by members of the bench.

In 2 Freedman on Marriage and Divorce 1306, the following appears:

"The office of master is semi-judicial in nature, and he should exercise the same impartiality which is required of judicial officers."

In Kolopen v. Kolopen, 148 Pa. Superior Ct. 311, 313, the court said:

"A master occupies, for the time being, a quasi-judicial position, which requires as strict impartiality on his part as if he were a judge hearing the case. If, under the local rules of court, his examination of witnesses goes beyond inquiries as to the residence of the parties, so as to determine the jurisdiction of the court, and whether there is any collusion between the parties in securing a divorce, it should be absolutely impartial. It is no part of his duty to make out a case for the libellant, or help out the latter's testimony by asking him leading questions. The re-examination by the master of the libellant (pp. 71-80), after his own first examination, the examination by libellant's counsel, and the cross-examination by respondent's counsel, was wholly without justification, and seems like an attempt, by leading questions, based on, but unsupported by, libellant's prior testimony, to make out a case warranting a decree."

The master's report is entitled to the fullest consideration because of his personal contact with the witnesses, but it has no preponderating weight which must be overcome by the opposing party.

"The question in a divorce case is not whether there was evidence to support the findings of the master;

it is the duty of the court to make its own independent and careful investigation of the evidence to ascertain whether it does in truth establish a legal cause for divorce": Langeland v. Langeland, 108 Pa. Superior Ct. 375, 379.

## *Discussion*

Libellant filed 12 exceptions to the master's report, all of which, with the exception of the eleventh, are sustained, and the eleventh exception is dismissed.

The testimony in this case shows that for a number of years prior to December 11, 1941, respondent was repeatedly absent from her home both during daytime and during the evening, and that this absence extended until the early morning hours. On such occasions, libellant remained awake night after night awaiting her return and worrying about her safety, and when she did return, she would in all cases refuse to tell libellant where she had been, but the testimony of a number of other witnesses shows that on many of these occasions she was in company of men other than her husband.

This conduct on the part of respondent resulted in libellant being looked upon with scorn and ridicule by his fellow workmen, and the worry and shame resulting therefrom had an adverse effect on his health.

On the night of December 10, 1941, respondent had again stayed out, and when she came in and refused to explain where she had been, libellant turned her over his knee and spanked her. This is the only time he struck respondent during their married life, which began in the year 1918. The next morning, on December 11, 1941, libellant went to work as usual, but when he returned home in the evening, he found that respondent had left. It will be noted that the mother of respondent continued to reside with libellant for the period of a year after respondent had deserted. During this period, respondent never communicated

with libellant, not even through her mother, and subsequently she made no offer of reconciliation. In the opinion of the court, these circumstances show a wilful and malicious desertion on the part of respondent. After a long period of years, during which respondent misbehaved herself on frequent occasions, causing libellant great humiliation, he finally on one occasion attempted a physical correction, which resulted in respondent leaving home. Only such cause as would itself warrant a divorce is a reasonable cause for separating one's self from one's spouse: Rosa v. Rosa, 95 Pa. Superior Ct. 415. There was no such reasonable cause here.

Respondent having separated herself from libellant, without reasonable cause, the burden was upon her of showing by competent evidence that her separation was consented to by libellant or that she made an offer of reconciliation. She showed neither of these things: Bates v. Bates, 153 Pa. Superior Ct. 133; Thomas v. Thomas, 133 Pa. Superior Ct. 12.

### Decree

And now, December 23, 1946, the court having heard this case and having fully considered and proceeded to determine the same as to law and justice appertain, do sentence and decree that Merle Ross be divorced and separated from the nuptial ties and bonds of matrimony heretofore contracted between him, the said Merle Ross, libellant, and the said Sarah Edna Spotts Ross, respondent. And that thereupon all and every the duties, rights and claims accruing to either the said Merle Ross or the said Sarah Edna Spotts Ross at any time heretofore in pursuance of said marriage, shall cease and determine, and the said Merle Ross and Sarah Edna Spotts Ross shall severally be at liberty to marry again in like manner as if they had never been married.