## Goldberg *v.* Goldberg, Appellant.

*Divorce—Desertion—Evidence—Sufficiency—Cruel treatment—Justifiable desertion.*

A libel in divorce on the ground of desertion will be refused where the evidence of the respondent established a course of conduct on the part of the libellant (the husband) which would justify the respondent's action in leaving him.

A divorce should be granted only in cases clearly within the statute, and where a careful study of the record does not establish the requisite grounds, the libel will be dismissed.

Argued November 15, 1926.　Appeal No. 74, October T., 1926, by respondent from decree of C. P. Chester County, October T., 1924, No. 8, in the case of Louis Goldberg v. Hattie Goldberg.　Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.　Reversed.

Libel in divorce.　Before Hause, J.

The opinion of the Superior Court states the case.

The case was referred to Raymond B. Reid, Esq., Master, who recommended that a divorce be granted.

On exceptions to the Master's report the court dismissed the exceptions and granted a divorce.　Respondent appealed.

*Error assigned,* among others, was the decree of the court.

*A. S. Longbottom,* of *Byron, Longbottom, Pape & O'Brien,* and with him *George B. Johnson,* for appellant.

*J. Paul MacElree,* for appellee.

Opinion by Linn, J., December 10, 1926:

This appeal is from a divorce decree entered on the ground of desertion.　The defense was that libellant forced his wife from his house by cruel and barbarous

treatment and indignities to her person. We all agree that a defense was made out. It is not surprising to find contradictions in the evidence, but there is such convincing corroboration of the wife's evidence on essential matters and such lack of particularity in the husband's testimony as to control our inferences from the record.

The parties were married in 1905. Respondent left libellant in May, 1923. They have two surviving children, a son aged 17 and a daughter aged 10, when the testimony was taken; neither lives with the father; he has seen nothing of the son and very little of the daughter since the separation and has contributed nothing to their support.

He testified in very general terms in his own case that he gave his wife no cause to complain and none to leave him. Though his attention was called to numerous specific instances of complaint, many of serious import, by the testimony offered on behalf of respondent, he did not testify concerning them. A significant illustration may be selected from the testimony of the son, who said: "One particular instance my father struck my mother about two weeks before she left, and I was so tired of seeing my father strike my mother at different times I took a chance—I didn't care what happened any more—and I separated them. My father says, 'If you didn't separate us,' he says, 'one more blow and you wouldn't have any more mother, I would bust her damn head open.' Q. That is when? A. That is about two weeks before my mother left. Q. Before she left Coatesville this last time? A. Yes, sir?" The respondent testifies to the same incident but puts the time six months before she left. So, too, her testimony that from time to time without cause he accused her of improper conduct with named men is not without significance in the circumstances of this case in the absence of specific denial.

There is also corroboration of her evidence that beginning shortly after their marriage and continuing to the date of her leaving, he threatened bodily harm, struck her from time to time and otherwise abused her; that he cursed her and applied filthy epithets to her, and threatened to have her put in a lunatic asylum. Up to 1915, the corroboration is by her sister, but her knowledge included two periods of residence in the household, each of about eight weeks duration, when the children were born. For later parts of the period the corroboration is by the son and by several neighbors who testify to specific instances. There are matters, of course, to which respondent alone testifies; she described a quarrel two days before she left, concerning which she said, "And he grabbed me and choked me around the neck, and he said, 'I am not going to steal and rob for you, [he is engaged in the fruit business] and I am not going to make fires for you; I work mighty hard for my dollar; you know how to make an easy dollar, go out and make it.' Q. That is how many days before you left? A. Two days before I left. I even have the mark here on my neck from his nails yet." While the burden of proving the fact was upon her, it would seem that if libellant was guiltless of that assault, he had a strong interest in having the record show whether as she stated, such marks could still be seen on her neck. Why did he remain silent?

It has frequently been held that divorces should be granted only in cases clearly within the statute; a careful study of the record, only parts of which have been referred to, has convinced us that this is not such a case.

The decree is reversed and the record is remitted with instructions to dismiss the libel, the costs of this appeal to be paid by the libellant, the appellee here.