Thomas *v.* Thomas, Appellant.

Argued April 20, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Charles C. Crowell,* of *Crowell & Whitehead,* for appellant.

*Wm. S. Rial,* with him *H. E. Marker* and *H. E. Marker, Jr.,* for appellee.

OPINION BY RHODES, J., September 28, 1938:

The court below in this action of divorce entered a final decree granting a divorce a vinculo matrimonii to the libellant on the ground that his wife, the respondent, had wilfully and maliciously deserted him and absented herself from their habitation, without a reasonable cause, for and during the term and space of two years. See section 10 "The Divorce Law" of May 2, 1929, P. L. 1237 (23 PS §10). Upon the filing of the libel a master was appointed to take testimony. The master who heard the witnesses recommended in his report that a decree be granted to libellant. Although the master's report is entitled to the fullest considera-

tion because of his personal contact with the witnesses, it is not controlling on the court below or on this court. The court of common pleas must still be satisfied by its own knowledge that the averments of the libel have been proved by full and competent evidence before a decree can be granted. *Rinoldo v. Rinoldo,* 125 Pa. Superior Ct. 323, 327, 189 A. 566. In the same manner we are obliged to make an independent investigation of the evidence in order to learn whether it does in truth establish a legal cause for divorce. *King v. King,* 113 Pa. Superior Ct. 285, 173 A. 432. We have carefully examined the evidence, and have reached the same conclusions as the court below. Libellant established the essential statutory requirements to entitle him to a decree by clear and satisfactory proof. 23 PS Sec. 10(d) See *Sloan v. Sloan,* 122 Pa. Superior Ct. 238, 240, 186 A. 219.

It was averred in the libel that respondent, on or about January 24, 1934, wilfully and maliciously, without reasonable cause, deserted libellant and absented herself from their habitation, and continued in said desertion during the term and space of two years and upwards from that date. Respondent, in her answer, denied the desertion, and as a defense alleged that she lived and cohabited with libellant until January 24, 1934, when libellant forced her by cruel and barbarous treatment to leave their home, since which time she has not lived or cohabited with him.

There having been a separation for the required statutory period proved by libellant, the burden was on respondent to prove by competent evidence consent or a reasonable cause for her action. *Mertz v. Mertz,* 119 Pa. Superior Ct. 538, 180 A. 708. Only such cause as would itself warrant a divorce is a reasonable and just cause for desertion. *Rosa v. Rosa,* 95 Pa. Superior Ct. 415.

We are convinced that libellant's evidence established

all the legal elements of a wilful and malicious desertion by respondent, and that respondent thereafter never sought a reconciliation or made any offer to libellant to return. We are likewise convinced that respondent did not by credible testimony show such acts of cruel and barbarous treatment on the part of libellant as would justify the granting of a divorce to her on that ground. See *Winner v. Winner*, 122 Pa. Superior Ct. 382, 186 A. 245. The only remaining question which arises from the evidence is whether libellant by affirmative conduct, after the desertion on January 24th, precluded his right to a divorce.

The parties were married on September 1, 1920. They had five children, four of whom survive. On January 24, 1934, respondent left their home and returned to her own home in Jeannette, Westmoreland County, distant about two miles from the matrimonial domicile. Libellant testified that he was absent on the day respondent left; that she had no reason to leave; and that he did not know under what circumstances she left. Respondent had repeatedly stated to various parties, as well as to members of the family, that she intended to leave. On several occasions she sought employment, and in doing so expressed her intention to leave her family and earn her own living. We find no reason to discuss the testimony as to respondent's excessive drinking and neglect of her children and family. The testimony showed a lack of maternal interest in her household in general and in her children in particular. Disinterested witnesses corroborated the libellant in these particulars. As to the actual desertion on January 24th, libellant was corroborated by his two sons, aged at that time ten and eleven years, respectively, and at the time of testifying thirteen and fourteen.

After leaving, respondent obtained employment, and returned to the family home on but two occasions. On June 21, 1934, she came back and took away some

furniture. Libellant was not present at the time. Again, in August, 1934, respondent came to the home, as she testified, to see the children. On this occasion libellant was present, and, according to his testimony, he said that he did not think the children wanted to see her; that she had better keep on going; and that she could come back if she learned to behave herself. As to this occurrence respondent testified that she came out to see the children; that libellant refused to allow her to see them; that he took her by the arm and pushed her out. Respondent's version of what transpired on January 24, 1934, when she left and returned to her home in Jeannette, is in sharp conflict with the version of libellant and the two young sons who testified in corroboration of their father. Respondent testified that the reason for her leaving was that he insisted that she go back to her mother, and that he packed her clothes. She further testified that he gave her two black eyes and a bruised arm on the twenty-third, and that she had these when she returned to her mother's at Jeannette on the twenty-fourth. As to these alleged injuries respondent is corroborated by her two sisters. In this connection the testimony of respondent and her two sisters was strikingly similar. The mother who saw her on her return about eight o'clock that morning testified that "she had a black eye, some kind of a mark on her face."

Libellant denied that he struck his wife as she alleged, or that he ordered her to leave, and was largely corroborated by the two children. Although it is obvious that the marital life of these two parties was filled with unhappy differences, and was anything but calm and peaceful, still we are bound to conclude that the credible testimony sustains libellant as to respondent's leaving of the matrimonial domicile on January 24th, and as to what occurred on her return in August, 1934. We likewise are of the opinion that correct descriptions

of her conduct, attitude, and intentions are found in the evidence introduced in behalf of libellant. After leaving she never manifested any desire or intent to return and resume cohabitation with libellant. She testified that she had done nothing since January 24th, when she left libellant's home, to reconcile their differences.

The incident in August when she returned to see the children is referred to as precluding his successful prosecution of these divorce proceedings. Having established wilful and malicious desertion by respondent, it was not incumbent upon libellant to seek reconciliation, or ask her to return to his home. Her leaving was without reasonable cause or legal justification. It thus became her duty to seek a reconciliation and make an offer to return. *Ward v. Ward,* 117 Pa. Superior Ct. 125, 177 A. 515; *Winner v. Winner,* 122 Pa. Superior Ct. 382, 186 A. 245; *Murray v. Murray,* 80 Pa. Superior Ct. 575. According to her own testimony she sought no reconciliation, and she made no offer to return. We do not think his conduct on the occasion of her return in August to see the children in any way changed the status of the parties as it existed at that time. The conversation had reference to the children, whom she came to see. Although libellant was obliged to leave the door open for her return for two years, he was not obliged to take any affirmative action to bring about her return and the resumption of marital relations.

Her testimony does not contain the faintest trace that she ever entertained, since leaving, any desire to return or any intention of having the marriage relationship resumed. Her presence in libellant's home in August, 1934, was not prompted by any such motive, nor did it have as its objective any such purpose. Libellant did not close the door to her in seeking a reconciliation or in making a bona fide offer to him to return. Without a decided change on her part the

children should not have been again entrusted to her care. We gather from all the evidence a determination on the part of respondent to leave her family, and not to again resume marital relations with libellant. Under such circumstances, we cannot construe the statement of libellant on the occasion when respondent returned to their home solely for the purpose of seeing the children as such affirmative action as would make excusable, and not a wilful and malicious desertion, her subsequent remaining away. What he said did not amount to an encouragement to her to stay away, as she had already determined to do that very thing.

The action instituted by respondent against libellant for nonsupport, and her charge of assault and battery made against him are entitled to consideration, but they are not controlling, as in our opinion libellant's evidence establishes that he is entitled to a decree of divorce on the grounds alleged in the libel. See *Strathern v. Strathern*, 118 Pa. Superior Ct. 479, 484, 179 A. 915.

Decree is affirmed.