## Andrew *v.* Andrew, Appellant.

Argued October 4, 1940.

Before KELLER, P. J., CUNNINGHAM, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Nathaniel Speck,* with him *Clinton A. Sowers,* for appellant.

*Reuben Singer,* for appellee.

OPINION BY RHODES, J., January 30, 1941:

This action in divorce was brought by the husband against his wife on the grounds of desertion, cruel and barbarous treatment, and indignities to the person. The parties were married on December 31, 1931. After the marriage they lived together in various places until the alleged desertion on February 1, 1936. Since June, 1937, libellant has resided in Philadelphia, where he brought this action. Respondent lives in Washington, D. C. The master recommended a decree of divorce on the ground of desertion only. Exceptions to the master's report were dismissed by the court, and a decree granting libellant a divorce a vinculo matrimonii was entered. Respondent has appealed.

The libel alleged desertion on February 1, 1936, in Washington, D. C. Respondent filed an answer, and

averred that libellant subjected her to such continuing acts of cruelty and indignities throughout the marriage relation as to impair her health and endanger her life, and to further render her condition intolerable and life burdensome, and that libellant's course of conduct compelled her, for her own safety and peace of mind, to withdraw permanently from libellant on or about January 1, 1936.

From the evidence presented the master concluded that respondent was not subjected by libellant to such a course of treatment as endangered her life or health, or rendered her condition intolerable or life burdensome, and that she did not make out a defense justifying a separation. The master further concluded that respondent was not guilty of cruel and barbarous treatment of libellant and of indignities to his person as averred in the libel; but that respondent deserted libellant wilfully and maliciously on February 1, 1936, and has persisted in said desertion without a reasonable cause for more than two years. The master therefore recommended that the prayer of the libel be granted, and that a decree be entered divorcing the parties from the bonds of matrimony.

Counsel for respondent concedes that if the evidence adduced by respondent was not of such weight as to justify her separation from libellant, then a decree in his favor would be proper.

Respondent left libellant on several occasions prior to the alleged final separation on February 1, 1936.

A spouse is justified in withdrawing from the family relation where the cause is such as would sustain a dissolution of the marriage bond if application were made therefor. *Secor v. Secor,* 126 Pa. Superior Ct. 561, 562, 191 A. 647.

Under similar circumstances we have frequently held that the burden devolved on respondent to justify her action in leaving libellant. *Scholz v. Scholz,* 113 Pa.

Superior Ct. 359, 173 A. 761; *Secor v. Secor,* supra; *Thomas v. Thomas,* 133 Pa. Superior Ct. 12, 1 A. 2d 686.

Our independent examination of the record convinces us that the decree of the court below should be reversed, and the libel dismissed.  In coming to this conclusion we are not unmindful that the master recommended a decree in libellant's favor, and that the court below followed this recommendation, and that the master's report, although not controlling, is entitled to consideration.  *Golden v. Golden,* 134 Pa. Superior Ct. 211, 216, 3 A. 2d 941.

Libellant, at the time of the marriage, was attending the United States Naval Medical School, Washington, D. C., and respondent was in the government service. Thereafter he came to live with respondent in a private home where she resided at Quebec Place, N. W., in the City of Washington.  From there they moved to a boarding house, operated by a Mrs. Cox, on R Street in that city.  Respondent's child lived with them, she having been previously married and divorced.  Libellant likewise had been previously married and divorced.  Libellant lived at the latter place with respondent from June to about September 15, 1932, when he left for sea duty as pharmacist's mate.  Respondent remained until the following May.  As the result of a ruling which prohibited husband and wife being employed in the same department, she wrote libellant, who was on the Pacific Coast, that a decision would have to be made.  In reply he urged her to come to him, and informed her that the U.S.S. Chaumont would soon arrive at Norfolk, Va., where she could embark for the return voyage to San Francisco.  Respondent left Washington with her daughter for Norfolk, where she joined libellant aboard this ship, and in June, 1933, they sailed for San Francisco.  Respondent remained in San Francisco with her daughter until March, 1934, where libellant lived with respondent upon the occasions when

his ship was in port. In February, 1934, his ship having been ordered to Norfolk, Va., libellant agreed with respondent that after its arrival he would leave and meet her at Lansing, Mich., where he would buy a new automobile in which they could return to Norfolk. This arrangement was carried out, and they returned to Norfolk on April 4, 1934. They lived together in Norfolk until June, 1934, when there was a separation. There was a reconciliation, and they again lived together in Norfolk from October, 1934, until June, 1935. At this time respondent returned to her parents in Mississippi. Thereafter, at intervals, they cohabited together until their final separation on February 1, 1936. The first separation occurred in August, 1932, while they were living at the boarding house on R Street. Respondent testified that libellant slapped her, caught her by the throat and threw her on the floor; that as the result of this conduct she left and went to the home of her sister, who likewise resided in Washington. Libellant sought a reconciliation through Mrs. Cox with whom they boarded. The next morning he happened to meet respondent on her way to work. In the automobile in which she was riding was respondent's sister and the latter's future husband. At libellant's request the automobile in which respondent was riding was stopped, and he left his car and came to the car in which respondent was seated. He asked her to come with him, which she refused to do. He struck her and created a scene. Respondent's version of this occurrence was corroborated by her sister who was present, and also by Mrs. Cox who testified as to the admissions which libellant made to her. Respondent subsequently returned to live with libellant. As a result of further abuse and similar physical mistreatment, respondent again left libellant in June, 1934, while they were living at Norfolk, Va. After visiting at her home in Laurel, Miss., there was a reconciliation, and respondent returned to

live with libellant in Norfolk. Again, in June, 1935, respondent, as she testified, was obliged to leave libellant because of his brutal treatment and unbearable conduct. Respondent testified that preceding this separation libellant choked her, slapped her, and hit her in the face. Respondent again went to her parents' home in Mississippi; after a few weeks libellant followed her. Respondent apparently agreed to return with libellant, but the night before they were to leave, because of an unreasonable request, he called her vile names, got up at four o'clock in the morning, dressed, and left in his automobile. Previous to his leaving, respondent told him that if he left without her she would never return to him. Nevertheless, he left and returned alone to Norfolk, Va. The letters which he subsequently wrote to respondent are corroborative of respondent's version of these occurrences.

Respondent returned to Washington where she again obtained a position in the government service. During the fall of 1935, after her return from Mississippi, and while employed in Washington, libellant frequently called upon her, and endeavored to persuade her to return to him. She told him that she was willing to return to Norfolk to live with him providing he would be a gentleman and conduct himself properly thereafter. Respondent did not give up her position and return to live with libellant in Norfolk, and the occurrence on February 1, 1936, terminated all attempts at reconciliation. Respondent testified that on this occasion, in her apartment in Washington, D. C., libellant became angry and knocked her to the floor and swore at her. Thereafter she refused to have anything further to do with him.

Respondent's testimony, if believed, discloses a course of conduct by libellant which would entitle her to a divorce, at least, on the ground of indignities to the person. Respondent testified that libellant repeatedly

called her vile names during their married life, humiliated her in the presence of others, used profane and abusive language, and inflicted personal violence upon her on many occasions, and that these acts led to the various separations. The fact that she returned to him after acts of physical abuse does not militate against her, nor does it lessen the legal effect of libellant's conduct. *Bortell v. Bortell,* 78 Pa. Superior Ct. 201. A single indignity is not sufficient ground for a divorce, but there must be a course of conduct so persisted in as to render the other's condition intolerable and life burdensome.

The record which respondent has presented is replete with indignities, as well as with many acts which might come within the category of cruel and barbarous treatment. It is true that respondent's narration of what transpired during their married life is mostly uncorroborated. However, in certain material respects she is corroborated by the testimony of Mrs. Cox and her sister, Mrs. Nell Lammers. See *Hoagland v. Hoagland,* 104 Pa. Superior Ct. 33, 34, 159 A. 72. Libellant categorically denies that he ever struck respondent, or that he ever used any vile or offensive language; and his testimony that respondent had no cause to leave is a general statement to that effect. He is entirely uncorroborated, although he called two witnesses who testified to matters which we deem immaterial. There was introduced in evidence by respondent a number of letters which libellant wrote to her at various times. In our opinion these letters afforded substantial corroboration of respondent's version. In a letter which he wrote as early as April 21, 1933, he describes himself to respondent as a "very poor excuse for a husband," and that he was "stubborn, irritable and lots of other things combined." In other letters written subsequently to his return from Laurel, Miss., in the summer of 1935, he said: "I have regretted a thousand times the way I

acted that last night in Mississippi"; "forgive me for everything that I have ever done to you"; "I will admit that you are justified in feeling the way you do about the whole matter"; "regardless of what I have done and said to you"; "regardless of how contemptible and mean I have been to you."

The preponderance of the evidence is in respondent's favor, and on the record we are of the opinion that respondent has clearly and satisfactorily established such a course of conduct on the part of libellant as constitutes indignities to the person, and justified her separation from libellant. *Goldberg v. Goldberg,* 89 Pa. Superior Ct. 319. We think the record portrays a husband whose affection was more in evidence when his wife was away than when she was living with him. Respondent gives a plausible explanation of this characteristic. There is likewise justification for respondent's statement that when she was unemployed and living with him he manifested an attitude of which the expression "now I am in the driver's seat" was descriptive.

We all agree that respondent made out a defense to libellant's charge of desertion, which was the only charge pressed by him.

The decree of the court below is reversed, and the libel is dismissed.