McFarland, Appellant, *v.* McFarland.

Argued April 15, 1954. Before HIRT, ROSS, WRIGHT, WOODSIDE and ERVIN, JJ. (RHODES, P. J. and GUNTHER, J., absent).

*R. A. McCrady,* with him *McCrady & Nicklas,* for appellant.

*William J. Graham,* with him *Edward C. Boyle* and *Clyde P. Bailey,* for appellee.

OPINION BY HIRT, J., August 30, 1954:

The parties, now in middle life, were married in 1936. There are no children. The final separation occurred on March 17, 1951 when Kermit McFarland left his wife and their common home in Pittsburgh. She brought this action for divorce from bed and board in March 1952. The case was thoroughly tried before a Master who, in his report concluded that "Plaintiff is not entitled to a decree of divorce *a mensa et thoro* on the grounds alleged in the complaint." The Master accordingly recommended that the complaint be dismissed. Exceptions to the Master's findings and conclusions were overruled by the lower court and plaintiff was denied a divorce. Plaintiff in her complaint, in the language of Section 11 of the Act of May 2, 1929, P. L. 1237, 23 PS §11, charged that her husband had "maliciously abandoned his family" and had "offered such indignities to her person as to render her condition intolerable and life burdensome." Notwithstanding the consideration which we are bound to give to the report of the Master, especially as to his estimates

of credibility of the witnesses, our independent review of the record convinces us that plaintiff has clearly established malicious abandonment and is entitled to a divorce on that ground. The order will be reversed.

A husband is justified in withdrawing from the family relation only where the causes for leaving would constitute valid grounds for the divorce of his wife at his suit. *Andrew v. Andrew,* 143 Pa. Superior Ct. 68, 17 A. 2d 673. Defendant left the home without good reason and the circumstances establish that the leaving was malicious. He had been responsibly employed for some time as an editorial writer on the staff of the Pittsburgh Press, a Scripps-Howard newspaper. His attitude toward his wife began to change in 1949. He then ceased taking her out socially and she no longer was asked to accompany him to the usual functions which he attended in the interest of his newspaper. His indifference to his wife developed into an attitude of hostility toward her. In the spring of 1950 he began staying away from his home consistently and he had his meals elsewhere. In January 1951 he returned home from a hospital after an operation for appendicitis. There were words between the parties and on the morning of March 17, 1951 the defendant left the home for the Hotel Pittsburgher. He occupied a room there until the following June when he was transferred to a newspaper in Washington, D. C., by his employers, where he has since lived alone. On leaving for Washington he did not ask his wife to go with him.

The record clearly supplies the reason for the deterioration of the marriage. Defendant and his secretary had become enamoured of each other. Proof of their attachment depends upon the admissibility of copies made by plaintiff of typewritten love letters which she allegedly found in her husband's wallet over a period ending in November 1950. On the first oc-

casion on August 15, 1950 she became suspicious when her husband spent the evening in the home at a portable typewriter. During the night she found the first of the letters. She secretly made a pencil copy of it and later made a number of typewritten copies from her transcript of the original. Other letters were found in defendant's wallet from which she made copies in the same way. Notwithstanding the denials of both defendant and the secretary we are convinced that three of the letters, admitted as exhibits by copies, were written by him and two of them by her. The plaintiff in our view was incapable of composing them. The style of the letters attributed to the husband is that of an editor's desk—logical method and a discriminating use of expressive language. The letters have the ring of reality and even a capable craftsman could not have created an illusion of the sincerity with which the letters speak. The reference to a beloved editor of the Pittsburgh Press, who had recently died, as "Ed" and the use of "S.H." well may be accepted as the office usage of the newspaper staff in referring to the deceased editor and Scripps-Howard. The fact that none of the letters bore the name of the writer is a circumstance in favor of their authenticity rather than the contrary. One perpetrating a fraud would likely attach a signatory name in some form which would impute authorship to the person intended to be injured. And if the letters were fabricated at the instance of plaintiff it is highly probable that, to support the charge of indignities, immoral conduct would have been made an inference from the language of the fictitious concoction. There is no suggestion of illicit relations between defendant and the secretary in this record. Their conduct was circumspect. He only occasionally was seen in her company, and then for lunch or dinner before his transfer to Washington and he admits taking her out during his visits to Pitts-

burgh since then. She is still with the Pittsburgh Press. Our judgment is that the letters are genuine.

Plaintiff testified that on December 4, 1950, when she confronted her husband with her copies of the letters he took one of them from her and destroyed it. She testified further that he then said he "loved the girl, wanted to marry her, that we had been incompatible for a number of years. He thought he never loved me. I asked him why he married me. He said it seemed like a good idea at the time." The other copies of the letters according to the wife's testimony disappeared later from the place in the home where she kept them. Contrary to the estimate of the Master we accept the plaintiff's testimony as credible, corroborated as it is by the circumstances.

In our view the copies of the copies of the letters were properly admitted in evidence. The genuineness of the originals was proven. Defendant was notified to produce them; and his denial of their existence sufficently established that the originals were not available. Cf. *Brenner v. Lesher et al.*, 332 Pa. 522, 2 A. 2d 731. Nevertheless we do not accept the copies of the letters as proof of the factual statements contained in them. The charge of indignities has not been sustained. The letters however do indicate the reason for defendant's abandonment of his wife and are admissible as evidence of malice. Malice may be inferred from the circumstances where the other elements appear. *Dougherty v. Dougherty,* 166 Pa. Superior Ct. 219, 70 A. 2d 411.

A divorce from bed and board is no more than a judicial separation. Most of the benefits to be obtained by a wife in such proceeding flow from an order for permanent alimony under section 47 of the 1929 Act, 23 PS §47. Desertion persisted in for two years is not required but malicious abandonment must be cou-

pled with a failure to support, to justify a decree on that ground. *McMahon v. McMahon*, 167 Pa. Superior Ct. 51, 74 A. 2d 718; *Knaus v. Knaus*, 173 Pa. Superior Ct. 111, 95 A. 2d 358.

There is sufficient evidence of a failure of support. Defendant had continued the practice of paying his wife $40 per week and her rent and other bills after the separation but he stopped paying any bills after September 1951. An oral agreement was then negotiated between counsel for the parties providing for the payment of $250 per month in two semi-monthly payments. Payments began on November 1951 but payment on a check for $125 delivered to plaintiff in January 1952 was stopped by defendant although later made good. Defendant paid his wife nothing from February 15 to April 30, 1952 when on her petition she obtained an award of alimony *pendente lite* of $275 per month. When defendant defaulted in the payments for July and August 1953 defendant was adjudged in contempt which he purged however by subsequent payment of the arrears. Defendant now earns $16,900 per year. The wife is employed with net monthly earnings of about $150.

The order is reversed and the record is remitted to the lower court with instructions to enter a decree of divorce from bed and board as prayed for, and to award the plaintiff permanent alimony in the sum of $250 per month upon such terms, as to the entry of security by the defendant for the regular payment thereof, as the lower court may direct.

RHODES, P. J., and GUNTHER, J., did not participate in the consideration and decision in this case.