J-S04013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                      :           PENNSYLVANIA
                                        :
             v.                             :
                                        :
                                        :
ADRIAN K. AMARA                     :
                                        :
          Appellant                 :      No. 1730 MDA 2017

Appeal from the Judgment of Sentence June 21, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0006270-2015

BEFORE:    SHOGAN, J., OTT, J., and STEVENS*, P.J.E.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 10, 2019**

Appellant, Adrian K. Amara, appeals from the judgment of sentence entered on June 21, 2017, in the York County Court of Common Pleas. We affirm.

The trial court provided a thorough recitation of the factual history of this matter:

> This case has a tortured history. [Appellant] was first brought to trial on January 11, 2017. After the lunch break on the first day of trial, [Appellant] appeared for the afternoon session impaired and unable to remain conscious. This was corroborated by a positive drug test for opioid use. (Excerpt of Proceedings, 1/11/17 at 5). In short, [Appellant] went out and got high over lunch during his own trial for dealing heroin. As a result of [Appellant's] inability to aid in his defense due to his intoxication, a mistrial was declared. (E.P. at 7). [Appellant] was then brought to trial the following week on January 17, 2017. During the testimony of the police officers, at least 3 references were made to [Appellant's] "refusal to cooperate," in violation of his right to remain silent, which triggered another mistrial. (Notes of Testimony, 1/17/17 - 1/18/17 at 183).

_____

\*    Former Justice specially assigned to the Superior Court.

[Appellant] was brought to trial a third and final time on May 10, 2017. The Commonwealth first called Sergeant Adam Bruckhart to testify. (Notes of Testimony, 5/10/17 - 5/12/17 at 103). In June and July of 2015, Sergeant Bruckhart was coordinating a drug investigation with a confidential informant pertaining to a suspected drug dealer, Alana Clark, who lived at 30 North Broad Street in York, Pennsylvania. (N.T. at 106). Sergeant Bruckhart had the confidential informant conduct 3 controlled drug buys of heroin from Ms. Clark. (N.T. at 107-116). Each time, the confidential informant was searched before the transaction, was given an amount of official funds, and returned from the transaction with a quantity of heroin. (*Id*). These buys occurred on June 30th, July 7th, and July 14th of 2015. (*Id*). During the phone call to set up the buy on July 7th, Sergeant Bruckhart overheard the confidential informant speaking to a male voice on the other end of the call. (N.T. at 112). As a result of these controlled buys, Sergeant Bruckhart obtained a search warrant for the residence at 30 North Broad Street, and executed this warrant on July 15, 2015. (N.T. at 117).

A team of officers entered 30 North Broad Street pursuant to the warrant. They gathered all the residents in the kitchen. (N.T. at 117). Ms. Clark and [Appellant] were discovered together in a bedroom on the second floor. (N.T. at 118). In that bedroom, the officers found sandwich bags, magazine clippings, and packages of heroin. (N.T. at 124). The envelopes for the heroin were fashioned out of magazine clippings folded around a quantity of heroin. (N.T. at 124-125). Sergeant Bruckhart testified that this method of packaging was extremely rare. (N.T. at 126).

The police also discovered identification evidence for the occupants of the bedroom, including an [A]ccess card with Ms. Clark's name on it, and a voter registration card and paystub with [Appellant's] name on it. (N.T. at 127). The paystub was from August of 2013, almost two years prior to the search, suggesting [Appellant] had resided there for sometime [sic]. (N.T. at 128). Also located was $305 in cash, and three cellphones, two of which were submitted for analysis. (N.T. at 130, 134). None of the cash found matched the official funds used in the three controlled drug buys by the confidential informant. (N.T. at 144). Also located in the home were [Appellant's] children. (N.T. at 117).

The Commonwealth then presented testimony from Sergeant Travis Shearer. (N.T. at 151). Sergeant Shearer

participated in the execution of the search warrant at 30 North Broad Street, in which he interviewed [Appellant]. (N.T. at 152). During this interview [Appellant] stated that he was a drug user, that there were drugs in the upstairs bedroom of the residence where he had been located, and that those drugs were his. *Id.* Sergeant Shearer also recalled [Appellant] telling him that often times those with drug habits have to sell drugs to fund their addiction. (N.T. at 153).

The Commonwealth next presented the testimony of Trooper Shawn Wolfe. (N.T. at 161). Trooper Wolfe assisted in the controlled drug buys on July 7th and 15th by providing surveillance and taking photographs. (N.T. at 162-165). Trooper Wolfe also assisted in the execution of the search warrant on July 15th, in which he was the first to enter the bedroom and observe [Appellant] standing near the door, and Ms. Clark by the windowsill. (N.T. at 166). Trooper Wolfe then went outside to see what, if anything was thrown out of the window. (N.T. at 166). He observed on the ground directly below the window a clear plastic sandwich bag with drug residue in it and apparent packaging material. (N.T. at 167). When re-entering the house, Trooper Wolfe heard [Appellant] exclaim, "well you found it, that's it." (N.T. at 168).

The Commonwealth then called Jessie Coy, a qualified expert in cell phone data analysis. (N.T. at 178). [Appellant] objected to the admission of the evidence of text messages from the cell phones recovered at 30 N Broad Street. (N.T. at 180). One of the phones, an AT&T phone, belonged to Alana Clark, as she identified it as her own. (N.T. at 183). The second phone was a Samsung phone for which the police were unable to determine ownership, or the phone number. (N.T. at 184). Commonwealth's Exhibit 11 contained four screen shots of text messages from Alana Clark' s phone in the time frame shortly before the search. The Court allowed three of four screen shots to be presented, while the Court sustained [Appellant's] objection to the fourth screen shot. (N.T. at 193-204). [Appellant] did not object to the admission of the first two screen shots, in fact expressly noting there was no basis to object. (N.T. at 193-194). As detailed further in this opinion, the Court allowed the third screen shot to be admitted as it was an exception to the rule against hearsay as a present sense impression under Rule 803(3). (N.T. at 199-200).

Commonwealth's Exhibit 12 was a subset of text messages from Commonwealth's Exhibit 13, which were text messages from the unidentified Samsung phone. (N.T. at 205). The Court allowed these exhibits to be presented at trial, but did not permit them to go back to the jury during deliberations, so as to not overemphasize their significance or confuse the jury. (N.T. at 213). Commonwealth Exhibit 13 contained additional texts that were not relevant to the trial, nor were they referenced.

Mr. Coy then testified as to the contents of the text messages recovered from the cell phones. (N.T. at 222). The messages in Commonwealth's Exhibit 11, screenshots from Alana Clark' s phone, were conversations about setting up transactions for drugs. (N.T. at 225) The first two being messages between the confidential informant and someone using Alana Clark's phone, the third screenshot between someone identified as "Canday" and whoever was using Ms. Clark's phone. (N.T. at 225). Commonwealth' s Exhibit 12 contained similar messages from the unknown phone recovered in the bedroom, containing messages about setting up transactions for drugs. (N.T. at 227). Finally, Mr. Coy testified about Commonwealth's Exhibit 13, which were the messages recovered from the unidentified Samsung phone, in which unknown individuals sent text messages to the phone, referring to the addressee as a male, using terms like "bro." ( N.T. at 229).

The Commonwealth next called Detective Craig Fenstermacher, who was qualified as an expert in the packaging and sales of narcotics in York County, Pennsylvania. (N.T. at 250). Detective Fenstermacher testified that users of illegal drugs will commonly sell drugs to fund their habit, and that the method of packaging heroin in this case, which was wrapped in magazine paper, was unusual. (N.T. at 247). The evidence at trial showed that there were more magazines in the room where [Appellant] was discovered, in a state of being cut up to be used as additional packaging material. (N.T. at 131). When presented with a hypothetical situation matching the case at hand, Detective Fenstermacher stated in his opinion, based on his training and experience, that subjects packaging heroin in this manner would have possessed the heroin with the intent to distribute. (N.T. at 257).

The Commonwealth then rested, at which point [Appellant] elected to take the stand and testify on his own behalf. (N.T. at

268). [Appellant] testified that the drugs found in the residence were not his, but belonged to Ms. Alana Clark, who was the mother of his child. (N.T. at 273). [Appellant] denied that he ever told the police that the drugs were his or that he sold drugs. He sought to explain away his statement that drug users sell drugs to fund their habit as being in reference to Ms. Clark. (N.T. at 276). He acknowledged that he made the statement "oh there it is" when Trooper Wolfe came back inside with the drugs found below the window, but stated that this was in reference to the police telling him that they would rip the house apart until they found something. (N.T. at 278). He stated he had no knowledge that Ms. Clark was selling drugs[1], and only allowed her to stay at the house out of compassion as she was his child's mother. (N.T. at 279). [Appellant's] child lived in the residence where the drug vending operation was occurring. (N.T. at 276). Upon cross examination, [Appellant] stated that he was not using heroin at that time, *or at any time*[2]. (N.T. at 286).

> [1] Despite being discovered in a small bedroom with her, with heroin and packaging materials in plain view.

> [2] This untruthful testimony flew in the face of the fact that [Appellant] abused opioids and triggered a mistrial in his first trial.

After [Appellant's] untruthful testimony regarding no previous opioid use, [Appellant] presented a stipulation that both parties had agreed to, that on January 11, 2017, [Appellant] tested positive for unauthorized controlled substances, including, but not limited to, marijuana. (N.T. at 305). [Appellant] then rested. *Id.* This stipulation was entered in order to address the fact [Appellant] had just lied under oath about prior drug use at his first trial/mistrial where he used opioids over the lunch break, and was carefully crafted in a manner to not prejudice the instant trial by omitting reference to opioids.

The Commonwealth then presented the testimony of Karen Sipe, the confidential informant, on rebuttal. (N.T. at 306). Ms. Sipe testified that prior to July 15, 2015, she had purchased heroin from [Appellant], and that during the time period around July 15, 2015, she worked with Detective Bruckhart to set up heroin buys with [Appellant]. (N.T. at 308). At this point, the Commonwealth closed its case, and then both parties presented closing arguments. The jury then retired to deliberate, and returned with

a verdict of guilty for Possession with the Intent to Distribute, Criminal Conspiracy to Possession with the Intent to Distribute, and Possession of Drug Paraphernalia. (Notes of Testimony, 5/15/17 at 17).

Trial Court Opinion, 9/17/18, at 2-8. On June 21, 2017, the trial court sentenced Appellant to a term of six to twelve years of incarceration for possession of a controlled substance with intent to deliver ("PWID"),[1] a consecutive term of five to ten years of incarceration for conspiracy to commit PWID,[2] and a concurrent term of three to six months for possession of drug paraphernalia.[3] This resulted in an aggregate sentence of eleven to twenty-two years of incarceration, in addition to costs and fines. N.T., 6/21/17, at 20. Appellant filed a timely notice of appeal, and both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues:

[1.] The trial court erred in admitting Commonwealth exhibits consisting of text messages because there was no foundation that Appellant was associated with the cell phone number, no foundation who was communicating in the text messages, and the text messages were hearsay for which no exception applied under the circumstances.

[2.] The trial court abused its discretion in sentencing Appellant because it had pre-judged Appellant's sentence prior to trial by rejecting a plea agreement and demonstrating if Appellant was convicted at trial, the court would sentence him to an aggravated range sentence. The trial court further abused its discretion by

---

[1] 35 P.S. § 780-113(a)(30).

[2] 18 Pa.C.S. § 903(a)(1).

[3] 35 P.S. § 780-113(a)(32).

- 6 -

basing Appellant's aggravated sentence on (1) a prior conviction for PWID already included in his prior record score, (2) on Appellant obtaining an additional charge of simple assault while pending trial, (3) by failing to consider Appellant's drug addiction and need for rehabilitation, (4) and basing Appellant's sentence on the general issues surrounding the country's "opioid epidemic."

Appellant's Brief at 5.

In his first issue, Appellant avers that the trial court abused its discretion in admitting the Commonwealth's Exhibits 11, 12, and 13, consisting of screenshots of text messages and transcripts of text messages. Appellant alleges that these exhibits were inadmissible as they were not properly authenticated and amounted to hearsay. Appellant's Brief at 18.[4]

It is well settled that the admissibility of evidence is solely within the discretion of the trial court. *Commonwealth v. Woeber*, 174 A.3d 1096, 1100 (Pa. Super. 2017). This Court will reverse a trial court's evidentiary ruling only where there is a clear abuse of discretion. *Id.* Moreover, the admissibility of electronic communications is to be evaluated on a case-by-case basis as any other document to determine whether or not there has been an adequate foundational showing of their relevance and authenticity. *In the Interest of F.P.*, 878 A.2d 91, 96 (Pa. Super. 2005).

Appellant argues that the Commonwealth failed to establish that Appellant owned or possessed the cellular phone used to send the messages.

---

[4] We note the Commonwealth's candor as it concedes that the trial court abused its discretion in admitting Exhibits 11, 12, and 13 into evidence. Commonwealth's Brief at 13.

Appellant's Brief at 22-23.  Therefore, there was a lack of authentication.  *Id.* at 22-24.

The Commonwealth's Exhibit 11 consists of screenshots of three text messages.  The first two messages are not at issue.  N.T., 5/10-12/17, at 193.  However, Appellant objected to, and now challenges on appeal, the admissibility of the third screenshot on Exhibit 11.  *Id.* at 194.  The screenshot of the text reads, verbatim, as follows:

> Hey girl Is A not around? I asked him to front me till tomorrow but he didn't respond. I know ho you usually don't do that but I figured since I got paid tomorrow and come thru every Thursday then he would.  I'm going thru it today I missed tha clinic so I'm sick as fuck

Commonwealth's Exhibit 11.

At trial, Appellant objected that the text was not a complete conversation, there was a lack of foundation, there was no indication that Appellant was part of this conversation, and the whole of the text is hearsay.  N.T., 5/10-12/17, at 194-197.[5]  The trial court overruled Appellant's objection.

---

[5] We cannot agree with the Commonwealth's assertion that Appellant objected only on the basis of hearsay to Exhibit 11.  Commonwealth's Brief at 14.  The notes of testimony reflect that Appellant's counsel argued a number of bases for objecting to Exhibit 11.  N.T., 5/10-12/17, at 194-197.  Appellant's counsel objected based on relevance and a lack of foundation as to the participants in the text conversation and its date, which we deem an objection based on lack of authentication.  *See* Pa.R.E. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

*Id.* at 200. Additionally, Exhibits 12 and 13 were merely transcripts of text messages that appeared on a cellular telephone. Appellant reiterated his objection to Exhibits 12 and 13. *Id.* at 206. Appellant argued that there was no foundation that the cellular telephone belonged to Appellant, but the trial court concluded that the Commonwealth does not have to "prove a phone number." *Id.* at 211. The trial court admonished Appellant's counsel and the Commonwealth that the ruling on Exhibits 12 and 13 was a "double-edged sword" as it was not known if Appellant ever touched the telephone at issue. *Id.* at 211-213. Despite the equivocation, the trial court admitted Exhibits 11, 12, and 13 into evidence. After review, we conclude that the trial court abused its discretion.

In **Commonwealth v. Koch**, 39 A.3d 996 (Pa. Super. 2011), this Court discussed the requirements regarding the admissibility of text messages:

> [E]-mails and text messages are documents and subject to the same requirements for authenticity as non-electronic documents generally. A document may be authenticated by direct proof, such as the testimony of a witness who saw the author sign the document, acknowledgment of execution by the signer, admission of authenticity by an adverse party, or proof that the document or its signature is in the purported author's handwriting. **See** McCormick on Evidence, §§ 219–221 (E. Cleary 2d Ed. 1972). A document also may be authenticated by circumstantial evidence, a practice which is "uniformly recognized as permissible." **Commonwealth v. Brooks**, 352 Pa.Super. 394, 508 A.2d 316 (1986), (citing, *e.g.*, **Commonwealth v. Nolly**, 290 Pa. 271, 138 A. 836 (1927) (letters authenticated by contents: facts known only to sender and recipient); **Commonwealth v. Bassi**, 284 Pa. 81, 130 A. 311 (1925) (unsigned letter authenticated by defendant's nickname written on it, along with contents indicating knowledge of matters familiar to both defendant-sender and

witness-recipient); and ***McFarland v. McFarland***, 176 Pa.Super. 342, 107 A.2d 615, 616 (1954)).

As these cases illustrate, the difficulty that frequently arises in e-mail and text message cases is establishing authorship. Often more than one person uses an e-mail address and accounts can be accessed without permission. In the majority of courts to have considered the question, the mere fact that an e-mail bears a particular e-mail address is inadequate to authenticate the identity of the author; typically, courts demand additional evidence.

Text messages are somewhat different in that they are intrinsic to the cell phones in which they are stored. While e-mails and instant messages can be sent and received from any computer or smart phone, text messages are sent from the cellular phone bearing the telephone number identified in the text message and received on a phone associated with the number to which they are transmitted. The identifying information is contained in the text message on the cellular telephone. However, as with e-mail accounts, cellular telephones are not always exclusively used by the person to whom the phone number is assigned.

* * *

Authentication is a prerequisite to admissibility. … We held in ***In the Interest of F.P.,*** [878 A.2d 91 (Pa. Super. 2005),] and courts of other jurisdictions concur, that authentication of electronic communications, like documents, requires more than mere confirmation that the [telephone] number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required.

Glaringly absent in this case is any evidence tending to substantiate that Appellant wrote the drug-related text messages. No testimony was presented from persons who sent or received the text messages. There are no contextual clues in the drug-related text messages themselves tending to reveal the identity of the sender. In addition to evidence that Appellant identified the phone as hers, the trial court relied upon the fact that the cellular phone was found on the table in close proximity to Appellant. Trial Court Opinion, 11/30/10, at 13. However, we find Appellant's physical proximity to the telephone to be of no probative value in

> determining whether she authored text messages days and weeks before. On these facts, the admission of the text messages constituted an abuse of discretion.

***Koch***, 39 A.3d at 1004-1005.[6]

After review, we conclude there was no authentication of the messages, no evidence that Appellant had any involvement with the telephones in question, and no evidence of Appellant's involvement in the conversations. However, we conclude that any error was harmless.

The harmless error doctrine provides as follows:

> Harmless error exists if the state proves either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or 2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Callen***, 198 A.3d 1149, 1163 (Pa. Super. 2018) (citation omitted).

---

[6] We note that the trial court admitted Exhibit 11 under the "then-existing mental, emotional, or physical condition" exception to hearsay in Pa.R.E. 803(3). N.T., 5/10-12/17, at 200. However, as quoted above, "Authentication is a prerequisite to admissibility[.]" ***Koch***, 39 A.3d at 1005. Appellant objected on multiple grounds, including improper authentication to the admissibility of this Exhibit. N.T., 5/10-12/17, at 194-197. We conclude that we need not address hearsay because Exhibit 11 was never properly authenticated, and it never identified Appellant as a party to or a subject of the conversation, let alone as the owner of the cellular telephone. Moreover, there was confusion over the date that this text message was created. N.T., 5/10-12/17, at 193-195.

In support of its harmless-error argument, the Commonwealth avers that the evidence against Appellant was overwhelming. Commonwealth's Brief at 16. We agree.

The record reflects that Detective Sergeant Adam Bruckhart's confidential informant ("the CI") testified that she knew Appellant and purchased heroin from him on a number of occasions. N.T., 5/10-12/17, at 306-307. The CI said that she would call Appellant on the telephone and arrange to purchase heroin. *Id.* at 307. On July 14, 2015, the CI called Appellant, and the two arranged a location for the purchase of heroin. *Id.* at 308. The CI stated that Appellant informed her that he would send Ms. Clark to deliver the narcotics, and the CI received the heroin directly from Ms. Clark. *Id.* at 309. The heroin was uniquely packaged in a folded magazine clipping. *Id.* at 109.

Detective Bruckhart testified that he obtained a search warrant for the house in which Ms. Clark was suspected to reside at 30 North Broad Street. N.T., 5/10-12/17, at 117. When police executed the search warrant, they discovered Appellant and Ms. Clark together in a bedroom. *Id.* The couple's minor children, along with other family members, were also present in the house. *Id.* In the bedroom where Appellant was discovered, police found heroin, plastic sandwich bags, and magazine clippings fashioned into envelopes. *Id.* at 123-124. Inside these magazine-clipping envelopes were packages of heroin. *Id.* at 124. Detective Bruckhart testified that this sort of

packaging was rare. *Id.* Police also discovered digital scales and three cellular telephones. *Id.* at 126. Detective Bruckhart testified that there was evidence that Appellant and Ms. Clark lived in the residence. *Id.* at 127. This evidence consisted of Ms. Clark's Access card and mail addressed to Ms. Clark at the residence. *Id.* Additionally, police found a voter identification card and a two-year-old pay stub belonging to Appellant. *Id.*

During the search, Pennsylvania State Police Trooper Shawn Wolfe witnessed Ms. Clark near the window and found heroin on the windowsill. N.T., 5/10-12/17, at 167. Trooper Wolfe went outside to see if Ms. Clark had dropped any evidence out of the window. *Id.* at 167. Directly beneath the window, Trooper Wolfe found a plastic sandwich bag with suspected drug residue in it and an envelope crafted from a magazine clipping used as packaging material. *Id.* Trooper Wolfe returned to the interior of the house, and he testified that when Appellant saw him with the package found outside the window, he said, "[W]ell, you found it; that's it." *Id.* at 168.

After review, we conclude that this evidence overwhelmingly proved Appellant's involvement in a heroin-distribution enterprise with Ms. Clark, and any prejudice from the text messages was insignificant. *Callen*, 198 A.3d at 1163. The evidence established that Appellant and Ms. Clark conspired to illegally possess and distribute heroin and possess drug paraphernalia in violation of 18 Pa.C.S. § 903(a)(1), and 35 P.S. § 780-113(a)(30) and (32).

As such, any error in admitting the text messages into evidence was harmless. *Callen*, 198 A.3d at 1163. Accordingly, Appellant is entitled to no relief.

In his second issue, Appellant claims that the trial court abused its discretion in imposing sentence. Specifically, Appellant asserts the trial court impermissibly sentenced him outside of the Sentencing Guidelines, ordered the sentences to run consecutively, and relied on impermissible factors including the opioid epidemic and a prior conviction that was already factored into his prior record score. Appellant's Brief at 6-7. In his brief, Appellant correctly notes that this issue presents challenges to the discretionary aspects of his sentence. Appellant's Brief at 6-7, 27. It is well settled that when an appellant challenges the discretionary aspects of his sentence, there is no automatic appeal; rather, the appeal will be considered a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). Furthermore, as this Court noted in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> [a]n appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. §9781(b).

*Id*. at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)).

Appellant has satisfied the first three elements of the four-part test from *Moury*. Appellant preserved issues concerning the discretionary aspects of his sentence by filing a timely post-sentence motion and notice of appeal, and he provided a statement of reasons for allowance of appeal from the discretionary aspects of his sentence pursuant to Pa.R.A.P. 2119(f) in his brief. Next, we must determine if Appellant has raised a substantial question for our review. *Moury*, 992 A.2d at 170.

> A substantial question requires a demonstration that "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005). This Court's inquiry "must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Id*. Whether a substantial question has been raised is determined on a case-by-case basis; the fact that a sentence is within the statutory limits does not mean a substantial question cannot be raised. *Commonwealth v. Titus*, 816 A.2d 251, 255 (Pa. Super. 2003). However, a bald assertion that a sentence is excessive does not by itself raise a substantial question justifying this Court's review of the merits of the underlying claim. *Id*.

*Commonwealth v. Fisher*, 47 A.3d 155, 159 (Pa. Super. 2012).

In his Pa.R.A.P. 2119(f) statement, Appellant raises multiple sentencing issues. Appellant's Brief at 6-7. However, in the argument portion of his brief he abandons some of the claims raised in his Rule 2119(f) statement and presents a conglomeration of the remaining claims. From Appellant's

- 15 -

argument, we discern two distinct issues: the trial court abused its discretion by relying on the opioid epidemic, which Appellant argues was an impermissible factor; and the trial court abused its discretion in imposing an excessive sentence by sentencing Appellant outside of the Sentencing Guidelines and ordering the sentences to run consecutively. *Id.* at 27-35.

First, Appellant avers that the trial court relied on an impermissible factor, the opioid epidemic, in fashioning its sentence. Appellant's Brief at 27. We conclude that Appellant has presented a substantial question for our review. *See Commonwealth v. Shugars*, 895 A.2d 1270, 1274 (Pa. Super. 2006) (holding that a claim that a sentence is excessive because the trial court relied on impermissible factors raises a substantial question).

"[S]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008). Additionally, an abuse of discretion is not merely an error in judgment; rather, an appellant must establish that the trial court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or reached a manifestly unreasonable decision. *Id.*

Appellant avers that the trial court relied on the fact that Appellant sold heroin and that there were a substantial number of opioid-related deaths in York County. Appellant's Brief at 27-28. Appellant points out that the trial court stated that there had been over 4,000 deaths in York County related to

- 16 -

heroin overdoses in 2015. *Id.* at 28-29. Appellant disputes this number, and he alleges that there were in fact ninety-five heroin-related deaths in 2015. *Id.* at 30.

We conclude that this issue is waived. "Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed." *Moury*, 992 A.2d at 170. Although Appellant filed a timely post-sentence motion, he never objected at the time of sentencing or in his post-sentence motion to the trial court's reference to the opioid epidemic or the number of deaths attributable to heroin in York County.

Assuming, *arguendo*, that Appellant had preserved this issue, we would conclude that no relief is due. Although the trial court did state that there had been over 4,000 heroin deaths in 2015, N.T., 6/21/17, at 20-21, a number that was unsubstantiated, we conclude that the trial court's statement is of no moment. Read in context, the trial court noted only that there was an epidemic of heroin-related deaths, but the trial court stated "the Court does not hold [Appellant] in any way responsible for any heroin deaths." *Id.* at 20. In its opinion, the trial court addressed this issue as follows:

> With respect to [Appellant's] argument that the Court based his sentence on the general issues surrounding the nation's opioid epidemic, that factor was indeed one of several factors the court took into consideration for aggravation. The Court should take into account the overall effect and nature of the crime committed on victims and society. The Court referenced the grave impact the heroin epidemic has had on society at large and in the community of York County. The Court referenced the growing number of

- 17 -

heroin and opioid related deaths in the community, and how those numbers continue to rise. The Court took these factors into account, as should the impact of any crime on victims and society. The Court did not hold [Appellant] responsible for anything more than his pro rata contribution to a drug economy having serious impact on the community. Nor did the Court hold [Appellant] responsible for acts he did not commit. But, the Court did recognize how [Appellant's] actions and conspiracy increase the danger to society. The defense argument seeks for the judge to be deaf to the adverse impact of a [d]efendant's illicit conduct on the community. [Appellant] willingly engaged in the commerce of selling heroin, an illegal substance widely known to be causing widespread opioid overdoses and deaths. [Appellant's] argument seeks the court to sentence in a vacuum, without consideration of a [d]efendant's adverse contribution to a growing public health threat. The contribution of [Appellant] to the heroin economy in his second PWID conviction, and the negative impact of that illicit economy to the community, are relevant considerations for sentencing. In this case there was evidence of multiple sales presented, and preparation for more sales underway. The cumulative adverse impact of [Appellant's] conspiracy is a relevant sentencing factor.

Trial Court Opinion, 9/17/18, at 17-18.

Moreover, the trial court thoroughly explained the rationale for the sentences it imposed. N.T., 6/21/17, at 13-19. The trial court stated that it had reviewed a pre-sentence investigation ("PSI") report.[7] ***Id.*** at 13. While the charges in the instant case were pending, Appellant was charged with assault. ***Id.*** at 14. Appellant's drug use and repeat offenses illustrate a "lack of rehabilitative potential[.]" ***Id.*** at 16. The trial court noted that Appellant

---

[7] ***See Commonwealth v. Finnecy***, 135 A.3d 1028, 1038 (Pa. Super. 2016) ("[W]here the sentencing judge had the benefit of a [PSI] report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.").

lied under oath during trial, which was indicative of his "poor decision-making skills[.]" *Id.* at 17. Importantly, the trial court pointed out that Appellant's heroin-distribution enterprise was conducted out of his house, where children resided, and it posed an obvious danger to those children. *Id.* at 18. Accordingly, if Appellant had preserved this issue, we would not conclude that the trial court's passing reference to an unsubstantiated number of heroin deaths impacted sentencing or rendered Appellant's sentence an abuse of discretion.

Next, Appellant avers that the trial court abused its discretion by imposing an excessive sentence by sentencing Appellant outside of the Sentencing Guidelines and ordering the sentences to run consecutively. Appellant's Brief at 31. After review, we conclude that no relief is due.

The Commonwealth asserts that Appellant failed to preserve any challenge relative to the consecutive nature of the sentences imposed. Commonwealth's Brief at 23-24. We are constrained to agree. Therefore, this claim is waived. *Moury*, 992 A.2d at 170.

What remains is Appellant's bald assertion that the trial court erred in sentencing him outside of the Sentencing Guidelines.[8] Appellant's argument

---

[8] Appellant also discusses the supposed impact that a rejected plea offer, or "trial tax," had on his sentence. Appellant's Brief at 33-35. We conclude that this claim is waived. Appellant did not raise this issue at the time of sentencing or in his post-sentence motion. *Moury*, 992 A.2d at 170. Were we to reach this issue, we would conclude it was meritless. Prior to trial, the trial court

on this precise issue is sparse. However, we endeavor to determine if Appellant has raised a substantial question.

It is well settled that a trial court is permitted to sentence a defendant outside of the Sentencing Guidelines; however, when the court imposes such a sentence, it must provide its reasons for deviating from the Guidelines. 42 Pa.C.S. § 9721(b). A claim that the trial court imposed a sentence outside of the Sentencing Guidelines without stating adequate reasons raises a substantial question. **Commonwealth v. Robinson**, 931 A.2d 15, 26 (Pa. Super. 2007).

Here, however, Appellant never asserted that the trial court failed to state adequate reasons for sentencing Appellant outside of the Guidelines. Accordingly, we are constrained to conclude that Appellant failed to raise a substantial question. Moreover, as noted above, the trial court provided a thorough recitation of its reasons for imposing sentence, and we conclude that if Appellant had presented this issue properly and raised a substantial question, the rationale provided by the trial court aptly established the basis for sentencing Appellant outside of the Sentencing Guidelines. **See** N.T., 6/21/17, at 13-19. After review, we discern no abuse of discretion by the trial court in the sentence imposed.

---

discussed its rejection of the plea offer, but the trial court stated that it would have no impact on the court's rulings going forward. N.T., 5/10-12-17, at 9.

For the reasons set forth above, we conclude that Appellant is entitled to no relief on appeal. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/10/2019